THE STATE v. ROLLER, *Appellant.*

1. **Statute**: IMPLIED REPEAL BY REVISION. A statute revising the whole subject matter of a former statute and evidently intended as a substitute for it, although it contains no express words to that effect, repeals the former.

2. ———: ———: SALE OF INTOXICATING LIQUORS BY DRUGGISTS. The act of March 26th, 1881, "To regulate the sale of medicines and poisons by druggists and pharmacists," by implication repeals the act of May 19th, 1879, "To regulate the sale of intoxicating liquors by dealers in drugs and medicines," etc. NORTON, J., dissenting.

3. ———: ———: ———. Under the present statute druggists are prohibited from selling or giving away any alcoholic liquors as a beverage; but they may sell such liquors for medical purposes, and that without the physician's prescription required by the former act. NORTON, J., dissenting.

*Appeal from Saline Criminal Court.*—HON. J. E. RYLAND, Judge.

REVERSED.

*Draffen & Williams* for appellant.

1. By section 8 of the act of 1881, apothecaries registered as provided by the act "have the right to keep and sell, under such restrictions as are herein provided, all medicines * * of recognized medical utility." Whisky is admitted to be such a medicine. The act is a special grant to sell, not upon such terms as were prescribed by other statutes, but on such as are prescribed by this act. On these terms a special privilege is accorded to a certain class to sell liquor as medicine. This class are permitted to sell other medicines subject only to the restrictions contained in this act. Under the same restrictions they may sell whisky as a medicine. The trust spoken of by the same section is manifestly the privilege thus accorded them. If it be true that they can only sell on prescriptions of physicians, there is no trust confided in them. The trust is reposed in the physicians.

2.  By section 9 it is provided: "Nor shall it be lawful for any druggist or pharmacist to retail, sell or give away any alcoholic liquors or compounds as a beverage." It must be assumed that the legislature had an intelligent purpose in that enactment, and that it was supposed that there was a necessity for it.   Now, if it was intended that the act of 1879, absolutely prohibiting sales except upon a prescription, should stand, why the above provision? The act of 1879 was far more rigorous, and if it was to be continued, there was no ground for the above recited prohibition.   This would seem to show that the legislature did not intend to continue in force the act of 1879, otherwise they would not, with that act prohibiting sales of intoxicating liquors except for medical purposes and upon the prescription of a physician before them, have inserted a less exacting provision upon the same subject.

3.  Under the act of 1879 the sale of liquors as a medicine, but without a physician's prescription, was punishable by a minimum fine of $40, and a maximum of $200. Under the act of 1881 the sale by a druggist, as a beverage, renders him liable to a minimum fine of $25, and a maximum of $100.   In other words, if the law of 1879 is in force, then the druggist who in good faith sells liquor as he does any other drug, but without a prescription, in the estimation of the legislature, ought to pay not less than $40 nor more than $200 for the offense; while if the same man sells as a beverage, the legislature only intended to fine him from $25 to $100!   The man who turns his drug store into a dramshop commits a less grievous offense than the one who sells liquor as medicine under the privilege accorded him by the act of 1881.   Such a result could not have been intended.  The legislature evidently intended to cover in the act of 1881 the whole subject of the sale of liquors by druggists, and hence inserted the prohibition against the sale as a beverage under a penalty.

4.  One of the principal objects of the act of 1881 was to throw such restrictions around the business of druggists

that only those who could pass a satisfactory examination and show that they possessed the requisite qualifications could carry on the business. It was doubtless thought that by so doing the dramshops under the guise of drug stores could be more effectually suppressed than by requiring prescriptions as prerequisites to the sale of liquor. By the act of 1881 the legislature endeavored to reach the evil by according the privilege of selling liquor for medical purposes as a trust to a class whose qualifications have been passed upon by a board appointed by the governor, and who are examined and registered; and who, for a violation of this trust, are liable to the penalties prescribed by the act. It was, doubtless, thought that more could be accomplished by the character of the men permitted to engage in the business and by the supervision provided for in the act than by restrictive statutory enactments, which had proved failures heretofore.

*Davis & Willis* also for appellant.

The act of 1881 covers the whole subject of the sale of liquor by druggists in the State of Missouri; and since that act is a legislation upon all the points embraced in the act of 1879. we conclude that the intention of the legislature was to substitute the latter act for the former, and to thereby repeal the same. *U. S. v. Tynen,* 11 Wall. 89, 92; *Smith v. State,* 14 Mo. 147; *Murdock v. Memphis,* 20 Wall. 590; *Towle v. Marrett,* 3 Greenl. 22; *s. c.,* 14 Am. Dec. 206.

*D. H. McIntyre,* Attorney General, for the State.

1. Our act of 1881 is almost a literal copy of an Iowa. act approved March 22nd, 1880. 2 Miller's Code, 950. Thus, section 8 of both acts are the same except that the Iowa act contains a provision for striking the name of the offender from the register, and also these very important words "for the legitimate and actual necessities of med-

icine." Now it cannot be said that the omission of these words was by inadvertence, nor through ignorance of the effect, nor that it was without design. On the contrary, the presumption must be that the legislature knew and understood the provisions of both acts, that they carefully considered them together to ascertain what parts of the Iowa statute were adapted to the plan and purpose of the proposed act, and what parts were not so adapted. It must be presumed that they saw and understood what is patent to the most casual observation that the words above quoted, beyond question, gave the pharmacist under the said act, the right to sell for the legitimate and actual necessities of medicine, without the prescription. Iowa had no prescription provision, but licensed persons to sell intoxicating liquors for mechanical, medicinal and other purposes. Miller's Code, §§ 1526, 1555. And it must, therefore, be presumed that these words were left out because they did not agree with the laws of this State regulating the sale of intoxicating liquors. If the legislature had left them in, can there be any doubt that the prescription requirement of the act of 1879 would have been thereby repealed? Having stricken them out, can there be any more doubt that the provision was not thereby repealed and that the legislature so intended? This view of the question harmonizes with every rule of construction, and I believe it to be consonant with section 5461, Revised Statutes, which requires the laws regulating the sale of intoxicating liquors to be liberally construed as remedial in their character.

2. Granting that there is some conflict between the act of 1879 and 1881 in respect to the punishment for selling liquor as a beverage, this only shows that the earlier act is repealed to that extent, no further. It does not affect the question whether there is an irreconcilable conflict with reference to the prescription requirement.

3. If the two acts were intended to regulate the whole subject of the sale of intoxicating liquors by druggists, their titles fail to perform the office of expressing clearly

the subjects of the acts. The act of 1879 is entitled "An act to regulate the sale of intoxicating liquors by dealers in drugs and medicines; to define who shall be known in law as dealers in drugs and medicines;" not to regulate the sale of drugs and medicines. The act of 1881 is entitled "An act to regulate the sale of medicines and poisons by druggists and pharmacists." It is respectfully submitted that this act is intended to accomplish only what its title declares, to regulate the sale of medicines and poisons, as these terms are commonly understood; with incidental reference to the sale of intoxicating liquors by way of caution or warning, with the exception of the provision against giving away, retailing, etc.

4. The position that registered pharmacists may sell intoxicating liquors as medicines under no other restrictions than those contained in the act of 1881 is untenable in the face of the proviso to the 8th section of that act. "A proviso in deeds or laws is a limitation or exception to a grant made or authority conferred, the effect of which is to declare that the one shall not operate or the other be exercised unless in the case provided." *Voorhees v. Bank*, 10 Pet. 449; "The proviso is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it, or in some measure to modify the enacting clause." *Wayman v. Southard*, 10 Wheat. 1. Two difficulties lie in the way of the construction of the 8th section, contended for by the appellant. First, it stultifies the act, and makes it appear foolish in providing a penalty in the 9th section for the offense of selling, etc., as a beverage, since, if there can be no breach of that trust, (mentioned in the proviso,) except in the sale of such liquors otherwise than as medicines, as argued for appellant, it must follow that the sale would be as and for a beverage, and its punishment was already provided for in the 8th section. Any construction attended with this result must be erroneous, for it is the province of construction to make the statute consistent and intelligent in itself,

if possible.   With the construction put upon this act, who
can say what the penalty for selling as a beverage should
be under the act of 1881 ; whether it should be ascertained
by reference to the 8th or the 9th section.   The second
difficulty consists in the fact that it gives no meaning at
all to the proviso, for the reason that it excepts nothing,
does not qualify or modify the grant, and especially does
it deprive the words " from the utmost rigor of the law
regulating the sale of intoxicating liquors " of any mean-
ing.   What law regulating the intoxicating liquors ?   The
law in force at the time of the passage of the act of March
26th, 1881.   Had the legislature meant the " rigor " of this
act, which nowhere in any specific provisions for punish-
ment reaches the utmost rigor, instead of the use of the
word law, it would have used the words, this act.   It is a
cardinal rule that in the construction of a statute effect is
to be given, if possible, to every clause and section of it.
*Att'y Gen. v. Detroit, etc., Co.*, 2 Mich. 138; *State v. King*,
44 Mo. 283 ; Potter's Dwarris, 189.   Words are never to
be construed as unmeaning and surplusage if a construc-
tion can be legitimately found which will give force to and
preserve all the words in the act.   *Leversee v. Reynolds*, 13
Iowa 310; *Hartford Bridge v. Union Ferry*, 29 Conn. 210.

5.   It is contended that there could be no breach of
the trust, except in the sale of such liquors, otherwise than
as medicine, and, therefore, the sale as a medicine, without
the prescription, is permitted, and hence the obvious con-
flict.   The major premise of this proposition is wrong, as
it seems to me, for it does not exhaust the reasonable and
logical possibilities of the question, nor is it obviously and
necessarily true that there could be no breach of the trust
except in the sale of intoxicating liquors, as a beverage.
It would be quite as reasonable to say that the breach
would be committed in selling without the prescription,
even for medical purposes.   Nay, it seems to me that it
would be more so, for this conclusion would harmonize the
two acts and be consistent with the stringent remedial pro-

visions adopted in the legislation of this State, to restrain the sale of intoxicating liquors.

Stress is laid upon the supposition that the class of men under the act of 1881, who engage in the business of selling drugs will be superior to those formerly engaged in the same business, and more worthy of trust and confidence. This view overlooks the fact that the 4th section of the act of 1881 makes it the duty of the board to register without examination, those engaged in the business at the passage of the act. And concerning many of those, it is a notorious fact, as common as a by-word, that they were not deterred by conscience or law, from carrying on surreptitiously an unlawful traffic in intoxicating liquors under the specious pretext of doing a lawful and respectable business.

HENRY, J.—The defendant was indicted for selling intoxicating liquors in less quantity than one gallon. The cause was submitted on the following agreed facts: "Defendant sold intoxicating liquor in Saline county, on the 2nd day of March, 1882, in less quantity than one gallon, for medical purposes only, but without a prescription from a physician. Defendant was at the time a duly registered pharmacist; and the liquor sold was whisky, which is pronounced by the National American and United States Dispensatory and Pharmacopœia to be of recognized medical utility." He was found guilty and fined $40, and has appealed to this court from the judgment.

The only question involved is whether the act of the legislature, approved March 26th, 1881, entitled "An act to regulate the sale of medicines and poisons by druggists and pharmacists," repealed the act of May 19th, 1879, entitled "An act to regulate the sale of intoxicating liquors by dealers in drugs and medicines, to define who shall be known in law as dealers in drugs and medicines, and to repeal an act entitled 'An act to regulate the sale of intoxicating liquors by dealers in drugs and medicines,' approved

May 2nd, 1877," appellant contending that it did, and respondent that it did not, and that druggists cannot now sell intoxicating liquors in less quantity than one gallon, except on a registered physician's prescription.

The act of 1881 establishes a "Board of Pharmacy for the State of Missouri," to be composed of three competent pharmacists, to be appointed by the governor, with the approval of the Senate, and requires every person desiring to conduct any pharmacy, drug store, apothecary shop or store for the purpose of retailing, compounding or dispensing medicines, or poisons for medical use, to undergo an examination by said board touching his qualifications to compound and dispense medicines, and, if found qualified, the board is required to give him a certificate and register his name in a book to be kept for that purpose. Persons engaged in the business of pharmacists and druggists at the date of the passage of the act were entitled to be registered without examination, provided, that if they failed to apply for registration within sixty days after being notified to do so, they should undergo the examination required of others when they did apply. By section 8, registered apothecaries "have the right to keep and sell, under such restrictions as are herein provided, all medicines and poisons authorized by the National American or United States Dispensatory and Pharmacopœia, as of recognized medical utility, provided that nothing herein contained shall be construed so as to shield an apothecary or pharmacist who violates or in anywise abuses this trust, from the utmost rigor of the law regulating the sale of intoxicating liquors." Section 9 requires the apothecary to use precautions therein prescribed in the sale of certain poisons enumerated, and declares that "it shall not be lawful for any licensed or registered druggist or pharmacist to retail, sell or give away, any alcoholic liquors or compound as a beverage," and declares the violation of any provision of the section a misdemeanor, punishable by a fine of not

less than $25 nor more than $100.   Section 13 repeals all acts or parts of acts in conflict with that act.

By the act of 1879 a dealer in drugs and medicines was prohibited from selling or giving away any alcoholic liquors in any quantity less than one gallon, and in any quantity to be drunk on the premises, without having a dramshop-keeper's license, unless on the prescription of a regularly registered physician, and for any violation of the provisions of the act was punishable by a fine of not less than $40 nor more than $200.

There is an obvious conflict between the two acts, in the punishment prescribed for a violation of their respective provisions, and others equally irreconcilable in other respects though not so apparent.   Each act was intended to regulate the sale of alcoholic liquors by druggists, or dealers in drugs and medicines, and the act of 1881, in addition, regulates the sale of other poisons and medicines by druggists.   The act of 1879 defined a druggist to be one who " shall maintain a store, or known place of business, shall have complied with the law relating to merchants' licenses, and shall have, at all times on hand at said store, or place of business, a stock of goods such as are usually kept in drug stores, exclusive of intoxicating liquors."   While the act of 1881 does not attempt to define the term "druggist," it by implication declares that no one shall be so regarded unless registered as such under its provisions, and expressly confers the privileges of druggists given by that act, upon such as register, without requiring of them the prerequisites which enter into the definition of a druggist, in the act of 1879.   The act of 1879 authorized dealers in drugs and medicines to sell alcoholic liquors in any quantity less than a gallon on the prescription of a physician regularly registered, and not otherwise.   It required them also, by section 2, to keep a store or known place of business, as above stated; on the conditions therein prescribed he was authorized to sell. By the act of 1881, registered druggists and pharmacists

have the right to sell medicines and poisons authorized by the Dispensatory and Pharmacopœia, under such restrictions as are imposed by that act. No restrictions imposed by other acts have application to them. The proviso to the 8th section, " That nothing contained in the act should be so construed as to shield an apothecary or pharmacist who violates or in anywise abuses the trust reposed in him from the utmost rigor of the law regulating the sale of intoxicating liquors, has not the effect to impose restrictions upon druggists other than those prescribed by that and other sections of the act. The trust mentioned in that proviso relates to the sale of intoxicating liquors. There can be no breach of that trust except in the sale of such liquors otherwise than as medicines, and that breach of the trust is by section 9 declared a misdemeanor, and punishable by a fine of not less than $25 nor exceeding $100. One restriction of the act of 1879, was as to quantity, but by the act of 1881 a druggist cannot sell alcoholic liquor as a beverage in any quantity. He is restricted to its sale as a medicine.

Both the act of 1879 and that of 1881 were intended to regulate the whole subject of the sale of intoxicating liquors by druggists. Each covers the same ground on that subject, and it was held in *Smith v. State*, 14 Mo. 152, that "A statute is impliedly repealed by a subsequent one revising the whole subject matter of the first," and Judge Ryland, delivering the opinion of the court, remarked that " a subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on the principles of law, as well as in reason and common sense, operate to repeal the former." Citing *Bartlet v. King*, 12 Mass. 537 ; *Nichols v. Squire*, 5 Pick. 168 ; *Com. v. Cooley*, 10 Pick. 37. There is no room to doubt that the act of 1881 was intended as a substitute for that of 1879 ; and the time has passed when one in this State could erect a shanty at a cross-roads and keep for sale a few bottles of

patent medicines, and many bottles of adulterated whisky, and claim to be a druggist.

The judgment is reversed.   All concur except NORTON, J., who dissents.

NORTON, J., DISSENTING.—Not concurring in the above opinion, I deem it proper to give my reasons for dissenting.

The only question presented by the admitted facts of the case is, whether under existing laws a druggist can sell intoxicating liquors as a medicine without the prescription of a regularly registered physician.   The 3rd and 4th sections of an act entitled "An act to regulate the sale of intoxicating liquors by dealers in drugs and medicines, to define who shall be known in law as dealers in drugs and medicines," etc., make it a misdemeanor punishable by a fine of not less than $40 nor more than $200 for any such dealer to sell or give away liquors of any kind, unless the same are prescribed by a regularly registered physician. Laws 1879, p. 165.   If the said statute is in force, the defendant, under the admitted facts, is guilty of violating it. It is, however, argued, and the opinion of the court so holds, that the said act of 1879 has been repealed by a subsequent statute, the title to which is, "An act entitled an act to regulate the sale of medicines and poisons by druggists and pharmacists."   Laws 1881, p. 130.   It is not pretended, nor is it claimed, that the act of 1881 in express terms repeals the act of 1879, but it is claimed that the latter act is repealed by necessary implication.

The rule that repeal by implication is not favored, and that before a later act can be construed to repeal a for-mer one, the repugnancy between the two acts must be such that both cannot stand together, is so familiar that no citation of authorities is necessary to establish it.   It is also a rule equally familiar that if the later and former acts can be construed so that both may be operative, such construction should be adopted.   Guided by these plain

and undisputed rules, I think it is manifest that no such inconsistency exists as makes the two acts irreconcilable.

The claim that said sections 3 and 4, of the act of 1879, are so repugnant to the act of 1881 that both cannot stand, is based upon sections 8 and 9 of the act of 1881. Said section 8 is as follows: "Apothecaries registered as herein provided shall have the right to keep and sell, under such restrictions as herein provided, all medicines and poisons authorized by the National American or United States Dispensatory and Pharmacopœia, as of recognized medical utility; Provided that nothing herein contained shall be construed so as to shield an apothecary or pharmacist who violates or in anywise abuses this trust, from the utmost rigor of the law regulating the sale of intoxicating liquors." It is argued that whisky is recognized as a medicine in the United States Dispensatory, and that the section above quoted authorizes druggists to sell it as such. I grant that it does authorize the sale of alcoholic liquors as a medicine; but the act of 1879 also authorizes its sale for such purpose when prescribed by a physician. What irreconcilability is there between an authority to sell whisky as a medicine, and a direction or requirement that when it is so sold it must be prescribed by a physician? In either case it would be a sale of it as a medicine. The mere fact of requiring it to be sold when prescribed by a physician, is not a negation of the right to sell it as a medicine. Had the act of 1879 forbidden druggists to sell liquor as a medicine under any circumstances, then such a repugnancy would have existed between said act and the act of 1881 as would justify the conclusion that the act of 1879 was repealed.

But aside from this, it seems to me that the general assembly have settled the question beyond controversy by the proviso incorporated in the very section giving the right to sell, where in the most emphatic language they lay down a rule for the construction of said act of 1881, and say "provided that nothing herein contained shall be

construed so as to shield an apothecary or pharmacist who violates or in anywise abuses this trust, from the utmost rigor of the law regulating the sale of intoxicating liquors." The language of said proviso, in my opinion, forbids the construction placed upon the act of 1881 in the opinion of the court, which construction renders meaningless said proviso. It is contended that the proviso only has relation to the following provision in section 9 of the act of 1881, viz: "Nor shall it be lawful for any licensed or registered druggist or pharmacist to retail, sell or give away any alcoholic liquors or compounds as a beverage, and any person violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $25 nor more than $100." To apply the proviso in section 8 to the above provision in section 9, would render the proviso useless and meaningless, for he reason that without it, any druggist selling liquor as a beverage, would have subjected himself under section 9 to prosecution for a misdemeanor, and a fine of not less than $25 nor more than $100.

But more than this, it is shown by the proviso that it could not be so applied, for it was not the utmost rigor of the law of 1881, (which, as I have shown, was entitled "An act to regulate the sale of medicines and poisons by druggists and pharmacists,") from which a druggist was not to be shielded for violating the trust, but for such violation he was not to be shielded by anything contained in the act of 1881 from the utmost rigor of the law regulating the sale of intoxicating liquors.

In my judgment, and according to all recognized rules of construction, there is no such repugnancy between the two acts as would justify the conclusion that the last act operates as a repeal of the former act, especially so when to make the repugnancy appear the rule of construction which the legislature directs to be applied to the latter act must not only be ignored, but a rule of construction which virtually expunges from the 8th section of the act of 1881

the proviso contained therein by applying it not to the law of 1879, which is a law regulating the sale of intoxicating liquors by druggists, but to an act regulating the sale of medicines and poisons by druggists and pharmacists. I think it apparent that the general assembly, so far from intending to repeal the act of 1879, which authorized druggists only to sell liquor when prescribed by a physician, intended to continue it in force by adding said proviso to said section 8, which is equivalent to a declaration to druggists: We give you the right to sell alcoholic liquors as a medicine, but there is a law now existing regulating the sale of intoxicating liquors by druggists, which makes it an offense to sell it as a medicine except when prescribed by a physician, and if you violate the trust by selling as a medicine without such prescription, you shall not only be subjected to the rigor but the utmost rigor of that law.

If the law is as declared by the court, all that a druggist, when indicted under the act of 1881 for selling alcoholic liquors as a beverage, will have to do to insure acquittal, will be to show that the liquor was called for as a medicine, and that he sold it as such. And if indicted under the act of 1879 for selling it as a medicine without the prescription of a physician, all that he will have to do will be to claim that under the act of 1881 he had the right so to sell it.

For the reasons given, I think the judgment ought to be affirmed.

*Motion for rehearing overruled.*