THE STATE v. WILSON, *Appellant.*

1. **Statutory Construction**: LICENSE: DRUGGIST: MEDICATED BITTERS. Medicated bitters called "Dr. Wilson's Rocky Mountain Herb Bitters," and containing alcohol, are, within the prohibition of section one, acts of General Assembly of 1879, (Acts, p. 166,) (R. S., § 5472,) against dealers in drugs and medicines selling or giving away intoxicating liquors or medicated bitters containing alcohol, without having a dramshop keeper's license.

2. ———: ———. Nor can such dealer claim exemption in favor of his bitters under sec 3 of said act, (R. S., § 5474). The exemption mentioned in that section refers to the use of liquors by a druggist in the admixture of necessary remedial compounds, as they are required in the ordinary business of a druggist, and not to an admixture which results in a compound popularly known as "bitters," and as such called for and used as an alcoholic beverage.

*Appeal from Adair Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*D. H. McIntyre*, Attorney General, for the State.

The bitters sold were "medicated bitters containing alcohol," and druggists were prohibited from selling them by section 1, page 166, Laws 1879. The only provision of law then in force (1880) under which defendant could claim the right to sell such bitters as is agreed were sold, is that

part of section 3, page 166, Laws 1879, which says : " Such dealer in drugs and medicines may sell or give away, in any quantity    *    *    liquors of any kind when the same    *    *    are used solely in the admixture of necessary remedial compounds    *    * ." It is evident that the section last quoted was only intended to give druggists authority to sell liquors to physicians and others for the ordinary compounding and preparation of medicines, in like manner as in the "preparation of tinctures," and that it was never intended to give them the right to use it as an ingredient in a medicated bitters prepared by them for general sale. Any other interpretation of the exception in the 3rd section, would render the prohibition to sell "medicated bitters" contained in the 1st nugatory.

MARTIN, C.—The defendant was indicted at the October term, 1880, of the circuit court of Adair county, for selling intoxicating liquor as a druggist in less quantity than one gallon. He pleaded " not guilty," and the cause was tried by the court sitting as a jury at the February term, 1881.

The following agreed statement of facts was submitted to the court:

1. That defendant sold one pint bottle of " Dr. Wilson's Rocky Mountain Herb Bitters," as charged in the indictment. 2. That said bitters are intoxicating to a certain extent, and contain alcohol. 3. That said bitters contain cinchona, columbo, gentian, quassia, orange peel, anise, coriander seed, ginseng syrup, alcohol and water. 4. That all the above mentioned articles in number 3 are good and genuine medicines of great medicinal virtue, and possess great and genuine medicinal properties. 5. That the alcohol used was only sufficient and for the purpose of securing and preserving the medicinal properties of the aforesaid medicine, and that the alcohol so employed is a necessary and constituent element to obtain and preserve the medicinal qualities of the aforesaid medicine so employed in their

composition.　6. That the defendant is a druggist and engaged in said business in the town of Kirksville, and that he is the owner and proprietor of a drug store in said town.

The defendant, in addition to the above, testified that the bitters in question were prepared and sold by him in good faith as a medicine, and not for the purpose of evading the liquor law, and that he was not a registered physician.　Dr. F. A. Grove testified that he was a druggist and regular registered physician and surgeon, and that he had examined the formula of said bitters; that they were a good remedy for several enumerated diseases and as a tonic and invigorator equal to the best.

A letter from United States Commissioner of Internal Revenue was read in evidence, stating that it was the opinion of the commissioner that said bitters should be classed as medicinal for purposes of taxation under the internal revenue laws, and that when properly stamped, they might be sold without rendering the vendor liable to pay special tax as a liquor dealer.

The court found defendant guilty, and assessed his fine at the sum of $40, on the 25th of February, 1881.　Motions for new trial and in arrest of judgment were filed in due time, and overruled by the court, whereupon the defendant made application for an appeal to this court, which was granted.

On the 19th of April, 1881, the defendant filed an application in the Supreme Court asking that the case be advanced on the docket, which was denied by the court. Since this action of the court the defendant does not seem to have paid any further attention to his defense.　No statement or brief appears on file in his behalf.　The case seems to have been brought up for the purpose of obtaining a construction of the act of the general assembly relating to the sale of liquor by druggists, approved May 19th, session acts 1879, page 166.　It is our opinion that this act of the legislature was intended to apply to just

such compounds as appear from the evidence to constitute "Dr. Wilson's Rocky Mountain Herb Bitters."

The first section of that act provides that "no dealer in drugs and medicines shall, directly or indirectly, sell or give away any intoxicating liquors, and *medicated bitters containing alcohol*, in any quantity less than one gallon, and in no quantity to be drank upon the premises, without first having obtained, in the manner provided by law, a license as a dram-shop keeper, except as hereinafter specified." This language certainly includes the medicated bitters sold by defendant, because they are admitted to contain alcohol. Neither do I think the defendant can claim any exemption in favor of his "bitters" from the language of the 3rd section of the act, which reads as follows: "Such dealer in drugs and medicines may sell or give away in any quantity, wines for sacramental purposes; liquors of any kind when the same are prescribed by a regularly registered physician, or *are used solely in the admixture of necessary remedial compounds*, the preparation of tinctures and the compounding of a written prescription, made and signed by some regular practicing physician, who shall have stated in such prescription that the liquor therein prescribed is a necessary ingredient: *Provided*, that such prescription shall in no case authorize such sale or gift more than one time."

The clause in this section which purports to authorize the druggist to sell any liquors which "are used solely in the admixture of necessary remedial compounds," was not, in our opinion, intended to authorize the sale of "medicated bitters containing alcohol." It refers to the use of liquors by a druggist in the admixture of necessary remedial compounds as they are required in the ordinary business of a druggist. When the admixture results in a compound falling under the popular designation of "bitters," and as such may be called for and used as an alcoholic beverage, it clearly falls within the prohibition of the act, although it may possess some intrinsic remedial qualities.

But the use of liquor in such a compound cannot be regarded as used "solely in the admixture of necessary remedial compounds." The act does not absolutely prohibit the use and sale of such a compound. It only declares that when the admixtures of a druggist possess the ingredients and take the popular form and designation of alcoholic "bitters," he must sell them under the license of a dram-shop keeper and not under the license of a druggist.

A casual inspection of the elements ot the compound in question cannot fail to reward the investigator with an amusing surprise, if nothing more. Considering that *cinchona* comes from Peru, *columbo* from Mozambique, *gentian* from the Alpine meadows of Europe, and *quassia* from tropical America or the West Indies, I am at a loss to find any herb or ingredient in the compound capable of giving to it its Rocky Mountain character, unless it be the alcohol. No one will pretend that the water called for in the receipt could effect such an extraordinary transformation of the ingredients used. As the conviction in this case took place before the passage of the act of March 26, 1881, it is not affected by the provisions of said act. See *State v Roller*, 77 Mo. 120.

Finding no error in the record the judgment is affirmed. All concur.