STATE OF MISSOURI, Respondent, v. GEORGE W. WRIGHT, Appellant.

### Kansas City Court of Appeals, January 25, 1886.

1. CRIMINAL LAW—SALE OF LIQUORS BY DRUGGISTS, ETC—ACT OF 1883 AS TO DRUGGISTS.—The act of 1883 (Laws of 1883, p. 89) "to regulate sale of medicines and poisons by druggists," etc., was intended as a regulation of the sale of intoxicating liquors of all kinds by druggists and pharmacists, and by it was repealed all other acts in so far as they related to such regulation. And as to such regulation the act of 1883 was intended to be complete and perfect, in and of itself.

2. ———— ———— ACT OF 1881 AS TO DRUGGISTS—ACTS OF 1883 AS TO SAME.—With the exception of a *proviso* in section eight, and of a small portion of section nine, of the act of 1881, relating to druggists, that act was wholly devoted to the subject of the regulation of "the sales of medicines and poisons by druggists and pharmacists." Neither section seven nor section twelve of that act has any application to the sale of intoxicating liquors by druggists. The term "proprietary medicines" refers to such only as are *not* "alcoholic liquors or compounds." And under this act, not even a druggist could have sold "proprietary medicines,' which *were* " alcoholic liquors or compounds," without having the license of a dramshop keeper. Neither under the act of 1883 could druggists sell such alcoholic liquors or compounds (as, for instance, the Tonic Bitters in proof in this case), for medicinal purposes, without a written prescription, from a regularly registered and practicing physician, unless he had the license of a dramshop keeper.

APPEAL from St. Clair Circuit Court, HON. C. G. BURTON, Judge.

*Affirmed.*

Statement of case by the court.

The defendant was indicted for selling, as a druggist, intoxicating liquor in less quantity than one gallon, and not upon a written prescription, etc. The case was submitted to the court sitting as a jury upon the following agreed statement of facts:

"That the defendant on the thirtieth day of August, 1883, at the county of St. Clair, State of Missouri, sold a bottle of about one pint of Empire Tonic Bitters, manufactured by Donnell Manufacturing Company, St. Louis, Missouri. That said bitters was sold in the original bottle or package of the manufacturer and is a proprietary medicine, and composed of the following drugs and made by the following formula, to-wit:

"FORMULA EMPIRE TONIC BITTERS.

"16 ozs. Senna Leaves, 8 ozs. Calamus Root.
4 ozs. Stor Annis Root, 24 ozs. Orange Peel.
½ ozs. Oil Orange, 12 ozs. Cassia Buds.
8 ozs. Coriander Seed, 16 ozs. Allspice.
6 ozs. Orris Root, 80 ozs. Sugar.
24 ozs. Cherry Bark, 8 ozs. Cardomin Seed.
1 oz. Gentian Root, 80 ozs. Prickly Ash Bark.
16 ozs. Prickly Ash Burrs, 4 ozs. Spirits Lavender.
4 ozs. Fluid Ext. Angelica, Comp.
17 gall. Dist. Water, 25 gall. Cologne Spirits.
15 gall. Angelica Wine, 10 gall. Sherry Wine.

"Mix dry drugs with oil orange. Dissolve sugar in distilled water. Mix water, wine and spirits together and with this menstrum moisten drugs and pack in conical ferculator and percolate to make sixty-nine gallons of bitters.

"That the Sherry and Angelica wine mentioned in the above formula are vinous liquors. That at the day and date of said sale, the defendant was a registered pharmacist and licensed dealer in drugs and medicines, and that said sale was made by defendant as such; and in good faith and not as a beverage, but without a prescription."

Johnson & Lucas, F. C. Nesbit, Oliver & Limbaugh, for the appellant.

I. The evidence shows that appellant was a registered pharmacist and licensed dealer in drugs and medicines, and that the "Empire Tonic Bitters was and is a proprietary medicine." Section twelve of the act of 1881 authorized such pharmacists to make sale of such medicines. Laws of 1881, p. 130, sect. 12.

II. Again the evidence shows that the sale was made in "the original bottle or package of the manufactures * * * and in good faith, and not as a beverage." Therefore, appellant was authorized, as a pharmacist, to make such sale. Laws of 1881, p. 130, sect. 7.

III. In 1879 the legislature sought to prevent druggists from selling all proprietary medicines and medicated bitters containing alcohol. Sect. 5472, Rev. Stat. But this was repealed at the next session of the legislature. Laws of 1881, p. 130, sect. 13; *State v. Roller*, 77 Mo. 120. The intent of the latter act (1881) was to remove all responsibility from the pharmacist for the quality of the drugs contained in "patent medicines," or those sold in "original packages of the manufacturers," and that the act should not apply to the "sale of proprietary medicines." The case of *State v. Lillard* (78 Mo. 136), is not applicable in principle. Besides Lillard was indicted in 1879—two years before the act of 1881 was approved. So as to the case of *State v. Wilson* (80 Mo. 303), the charge and conviction was under the act of 1879.

IV. The act of 1883 is not in conflict with or repugnant to section twelve of the act of 1881, and does not directly or by implication modify or repeal it. *In re Burns*, 66 Mo. 442.

No brief on file for the respondent.

HALL, J.—The question in this case is, whether in

August, 1883, under the statute law of this state as then existing, the defendant could, as a licensed druggist, sell the "bitters" in the quantity in proof for medicinal purposes without a physician's prescription or the license of a dramshop keeper. The affirmative side of this question is contended for by defendant. The "bitters" in proof were, in the meaning of the dramshop act, intoxicating liquor. Sect. 5461, Rev. Stat.; *State v. Lillard*, 78 Mo. 136.

Under the act of the legislature in 1879, relating to the sale of intoxicating liquors by druggists, chapter 100, Revised Statutes, it was unlawful for a druggist to sell or give away any intoxicating liquors or medicated bitters, containing alcohol, in any quantity less than one gallon, except upon a prescription by a regularly registered physician.

In 1881 there was enacted by the legislature an act, entitled "An act to regulate the sale of medicines and poisons by druggists and pharmacists to." Laws of 1881, p. 130. By judicial construction it has been held that, by the act of 1881, it was intended "to regulate the whole subject of the sale of intoxicating liquors by druggists;" and that "there is no room to doubt that the act of 1881 was intended as a substitute for that of 1879;" and that the act of 1879 was wholly repealed by that of 1881. *State v. Roller*, 77 Mo. 120.

By the act of 1881 a duly registered druggist or pharmacist could sell intoxicating liquors for medicinal purposes without a prescription from a physician. *Id.* In 1883 there was enacted by the legislature an act, entitled "An act to amend section eight (8) of an act, entitled 'An act to regulate the sale of medicines and poisons by druggists and pharmacists,' approved March 26, 1881, and to add three new sections to said act." Laws of 1883, p. 89. By the act of 1883 it is provided that "no druggist or pharmacist shall, directly or indirectly, sell, give away, or otherwise dispose of, intoxicating liquors of any kind in any quantity less than one gallon, for any purpose," except upon a written pre-

scription from a regularly registered and practicing physician.

The act of 1883 was intended as a regulation of the sale of intoxicating liquors of all kinds by druggists and pharmacists, and by it was repealed all other acts in so far as they related to such regulation. As to such regulation the act of 1883 was intended to be complete and perfect in and of itself. Upon its adoption it alone, as to such regulation, was the law in force. *State v. Roller, supra.* The correctness of this proposition, generally speaking, is admitted by the defendant; but he insists that as to proprietary medicines, patent medicines, and medicines sold in the original package of the manufacturer, the act of 1883 has no application. To sustain this position the defendant relies upon sections seven and twelve of the act of 1881. Section seven is as follows: "Every registered pharmacist, apothecary or owner of any drug store, shall be held responsible for the quality of all drugs, chemicals and medicines he may sell or dispense, with the exception of those sold in original packages of the manufacturer, and also those known as "patent medicines," and should he knowingly, intentionally and fraudulently adulterate, or cause to be adulterated, such drugs, chemicals or medical preparations, he shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be liable to a penalty," etc. Section twelve is as follows: "This act shall not apply to physicians putting up their own prescriptions, nor to the sale of proprietary medicines."

The act of 1881, by reason of section eight and nine thereof, was held in *State v. Roller, supra,* to completely regulate the sale of intoxicating liquors by druggists, a subject not mentioned in the title of the act. We, of course, follow *State v. Roller.* We do not fail in doing so when we say that, with the exception of a *proviso* in section eight and of a small portion of section nine, the act of 1881 was wholly devoted to the subject mentioned in its title, to-wit, the regulation of "the sale of medicines and poisons by druggists and pharmacists." Bear-

ing this fact in mind, it is readily seen, and we so hold, that section seven has no application to this case. That section cannot be held to authorize a sale of intoxicating liquors in the "original package," even though known as patent medicines. By that section the druggist is simply released from all responsibility for the quality of the drugs, etc., sold in the "original packages of the manufacturer," or known as "patent medicines."

By "proprietary medicines," as used in section twelve, were intended such proprietary medicines as were not "alcoholic liquors or compounds." Because, by section nine, it was provided, among other things, "Nor shall it be lawful for any licensed or registered druggist or pharmacist to retail, sell or give away any alcoholic liquors or compounds as a beverage." It is, therefore, self evident that by "proprietary medicines," as used in section twelve, were not intended such proprietary medicines as were "alcoholic liquors or compounds." By said term were intended those "proprietary medicines," which were not "alcoholic liquors or compounds," but were medicines, as distinguished from "alcoholic liquors and compounds;" and the "proprietary medicines" intended in section twelve were excepted from the effect of the regulation by the act of "the sale of medicines and poisons by druggists and pharmacists." By the act of 1881 any one, whether he was a druggist or not, might have sold "proprietary medicines," which were not "alcoholic liquors or compounds," but no one, not even a registered druggist or pharmacist, could have sold "proprietary medicines," which were "alcoholic liquors or compounds," as a beverage, without having the license of a dramshop keeper. By the term "intoxicating liquors," as used in the act of 1883, are intended intoxicating liquors in the meaning of the dramshop act, which, as we have said, include the "bitters" in proof. And we hold that the question in this case must be answered in the negative; and that, under the act of 1883, in force at the time of the sale by defendant, he

could not lawfully sell the "bitters" in the quantity in proof, as a registered druggist, for medicinal purposes, without a written prescription from a regularly registered and practicing physician, unless he had the license of a dramshop keeper.

Judgment affirmed.    All concur.