# E. J. WRIGHTSMAN et al., Appellants, v. J. J. GIDEON et al.

### In Banc, December 20, 1922.

1. **STATUTE: Repeal by Implication: Repugnancy.** It is a fair presumption that if the Legislature intended to repeal a statute, it would have done so in express terms, or by the use of words which are equivalent to an express repeal, and courts will not, if it can be consistently avoided, adjudge a statute is repealed by implication. Repugnant statutes necessarily supplant previous ones, but to have that effect they must be clearly repugnant, for unless a legislative intent is expressed in terms it will not be assumed if any other construction can be given to the later act.

2. ———: ———: **Repeal of a Designated Article.** The repeal by the new act of a designated article raises an implication that no further repeal was intended.

3. ———: ———: **Continuation of Power in Existing Board.** Whether the new act repeals that part of the then existing law which vested in a designated board power to purchase land for park purposes must be solved by inquiring whether the new act vests that power exclusively in some agency established by the new law, and does so in such clear language that the provision of the new law is in such irreconcilable conflict with the old law that there is no reasonable theory upon which the two can be harmonized.

4. ———: ———: ———: **Purchase of Land and Establishment of Parks: Commission Form of Government: Control.** The adoption by a city of the Act of 1913 providing for commission form of government did not extinguish the power of a park board created under the existing law to purchase land for park purposes. Said act expressly continued in force all laws previously in force applicable to cities coming under the act "not inconsistent with this article," and declared that, upon the passing of a city of the third class into the new class under the act, the terms of all officers of such a city "except library directors and park commissioners" then in office were to cease and determine, and its provisions creating a commissioner of public property and declaring that he "shall have control over all public parks and pleasure grounds in the city" did not invest him with power to purchase land for park purposes, and cannot be said to be in irreconcilable conflict with

Wrightsman v. Gideon.

the existing law creating a park board and authorizing it to purchase or condemn property and establish parks.

*Held*, by WOODSON, J., dissenting, that the said Act of 1913 provides that a city, having elected to adopt the commission form of government, has power to acquire property by purchase or condemnation, for the purpose of establishing and maintaining parks, and authorizes the commissioners to appoint all officers and employees under the commissioners and declares that the Commissioner of Public Utilities "shall have control over all public parks and pleasure grounds" and that the salaries of the officers and employees shall be fixed by the city council, and covers and revises all matters referred to in the then existing law, and covers many other matters of a kindred nature, and a careful review of the old and new acts demonstrates that if both are given force and effect there would be two systems of parks, controlled and managed by different sets of officers and employees, and the two are therefore inconsistent and repugnant, and the Act of 1913, being the later act, destroyed the park board appointed under the prior law.

5. **EXCESSIVE INDEBTEDNESS:** Void Legal Act: Assumption of Mortgage Debt by Park Board for City: Equitable Relief. Allegations, in a suit in equity brought by taxpayers, that the park board, in purchasing a tract of land for park uses, assumed an existing mortgage debt, and that the board had already incurred an indebtedness for park purposes in excess of the constitutional and statutory limit, and that the acts of purchasing said tract and assuming said indebtedness were *ultra vires* and void, afford no ground for a prayed relief that the defendant officers of the city be enjoined from carrying out the contract of puchase and from paying out park funds in the extinguishment of the encumbrance; for if the allegations be true the assumption of the indebtedness against the land was void as a matter of law, and leaves the grantor secured solely by the land itself, and leaves the title in the equity in the public, subject to the encumbrance, and any further attempt to unlawfully use available park funds to pay it may be dealt with when the attempt is made.

Appeal from Greene Circuit Court.—*Hon. Orin Patterson,* Judge.

AFFIRMED.

*G. A. Watson* and *Arch A. Johnson* for appellants.

(1)    The respondents called the Park Board were appointed under authority of Article 2, Chapter 93, R. S. 1909 (Art. 2, Chap. 80, R. S. 1919). Article 3, Chapter 72, R. S. 1919, enacted in 1913, provided a new charter for cities of the second class and by necessary implication repealed Article 2, Chapter 93, R. S. 1909, supra, in so far as the former law provided for such board with its attendant powers and duties. By the law of 1913, supra, cities adopting this law as its charter are given a new and different system for the acquirement and management of public parks from that provided in the old law. Therefore the respondent Park Board had no authority to bind the city in the purchase of the real estate. Sec. 7976, pars. 11, 36, R. S. 1919; Secs. 8018, 8023, 8025, R. S. 1919; State ex rel. Atty. Gen. v. Pearey, 44 Mo. 159; Music v. Ry. Co., 114 Mo. 309. (2)    The contract for the purchase of the land was in violation of the law. Sec. 12, Art. 10, Mo. Constitution; State ex rel. Smith v. Neosho, 203 Mo. 40.

*Dan M. Nee* and *Fred A. Moon* for respondents.

(1)    Article 3, Chapter 72, R. S. 1919, the charter under which Springfield has been operating since April, 1916, does not repeal by implication, as contended by appellants, Article 2, Chap. 80, R. S. 1919, under and by virtue of which the Park Board has its existence. Peterson v. Railroad Co., 178 S. W. 194. If there is any conflict at all it is between two different sections of the charter, namely, Sections 55 and 243. The former places control of parks in a commissioner, while the latter preserves the Park Board. Where there is an irreconciliable conflict between different parts of the same act, the last in order of position controls. State ex rel. v. Gideon, 273 Mo. 79. On the other hand, if there be an irreconciliable conflict between our present city charter and the general park law applicable to cities of the second and third class, as contended by peti-

tioners, then "the rule is, that when it can be seen that the exercise of any jurisdiction by a municipal corporation cannot be brought within the scope of the grant of its powers without a conflict with the laws of the State the exercise of such power cannot be allowed." City of Moberly v. Hoover, 93. Mo. App. 666. (2) The constitutional inhibition, Section 12, Article 10, is not in point, because it only applies to municipal and political corporations and sub-divisions of the State. The Park Board is neither. It is not made a body corporate by express language. Neither is it a body corporate by implication. Dillon on Municipal Corporations, sec. 64. Furthermore, if the Park Board be considered an arm or branch of the municipal corporation, said constitutional inhibition is still inapplicable because it prohibits the municipal corporatoin from contracting a debt in excess of its revenues for the current year, and the debt in the case at bar is not the debt of the body corporate. It is not even alleged to be. The municipal corporation is not obligated to pay the same either legally or morally. State v. Topeka, 74 Pac. 648; Burnham v. Milwaukee, 73 N. W. 1018; State ex rel. v. Neosho, 203 Mo. 76. (3) Petitioner's last point furnishes no ground for equitable relief: First, the designation of a Park acquired by the Park Board as a Negro Park would not and could not make such a park other than a free public park open to all persons desiring to use the same as such. Second, if the park board should attempt to exclude the "white public" from said park (it is not so pleaded), no citizen's rights could be invaded by such an order itself. His rights would only be invaded upon his being refused admittance to said park by those in charge upon attempting to enter said park. Not until then are his rights denied him, and at that time he would have an adequate remedy at law, and hence has no standing in a court of equity now. (4) Finally, these petitioners cannot maintain this action in their own names and right. If the mem-

bers of the Board are acting beyond the scope of their authority, or if the Park Board no longer exists, within the eyes of the law, and they are assuming to discharge certain duties as public officials, then the wrong is a public one, and the State by the Attorney-General or the prosecuting attorney of the county only can maintain an action to prevent either the wrongful assumption of public office or the wrongful assumption of a power by a public officer or trustee. The only exception to this rule is the one which permits the bringing and maintaining of a suit in equity by a taxpayer, as such, where the tendency of the wrongful act on the part of a public officer or board is to increase taxes (the petition is silent on the question of an increased tax burden), and hence inflict a special injury on the taxpayer as such. Mathis v. Cameron, 62 Mo. 506.

JAMES T. BLAIR, J.—The trial court sustained a general demurrer to the petition. Appellants refused to plead further, and judgment was rendered accordingly. This appeal followed. Appellants are resident tax-paying citizens of the city of Springfield. Five of the respondents are the Mayor and City Commissioners of the city, and the others are members of what is known as the Board of Commissioners of the Public Parks of the city, hereafter referred to as the Park Board.

The petition alleges, in substance, that on April 1, 1913, the city of Springfield was a city of the third class, organized as such under the laws of the State; that on the date named, at an election held under Section 10241, Revised Statutes 1909, a tax of one mill on the dollar was voted for the establishment and maintenance of public parks in the city, and has since been duly levied on all taxable property in the city, and regularly collected; that thereafter "a Board of Commissioners was selected and duly qualified under the provisions of Chapter 93, Article 2, Revised Statutes 1909;" that subsequently, August 2, 1915, the city of Springfield duly

Wrightsman v. Gideon.

elected to become a city of the second class "by adopting the provisions of the Act of . . . March 25, 1913, and thereafter proceeded to elect officers and administer the affairs of said city under the provisions of said act." It is then alleged that the act last referred to does not provide for the appointment of park commissioners, but confers exclusive jurisdiction of the parks of the city upon the mayor and the several commissioners thereof, and places all public parks and control and supervision thereof under control of the Commissioner of Public Utilities of the city. It is then alleged that in February, 1919, the defendants constituting the old Park Board, without authority, contracted to purchase from W. E. Freeman a tract of land in Springfield for the sum of $6500 for the purpose of using it "for a colored or negro park;" that by the terms of the contract Freeman "placed a deed of trust on the said real estate to secure the payment of an indebtedness of $5000 to the Citizens Bank, payable in installments of $1000 per annum, with seven per cent interest, and that this deed of trust was recorded; that said indebtedness, so secured, . . . the Park Board assumed and agreed to pay as a part of the purchase price for said real estate" and paid Freeman the $1500 balance out of the park fund; that a warrant for the $1500 was, by ordinance passed and approved in March, 1919, drawn on the park fund, and the amount paid, on the warrant, to Freeman as provided in the contract referred to; that defendants are now about to pay further sums out of the park fund "in pursuance of said contract of purchase; that in making the contract, and in making the payment to Freeman, the Park Board acted without authority of law and that their acts and contract were *ultra vires* and void," and that the threatened further payments are without authority of law for the reasons:

First. Under the law the mayor had no authority to appoint a Park Board, and the board appointed had

no authority to contract for or to purchase the land and have no authority to expend or control the expenditure of any part of the park fund; and

Second. The Park Board had no authority to obligate the city to pay out of the park fund the indebtedness secured by the deed of trust in question.

It is then alleged that this last mentioned agreement is in violation of Section 12 of Article 10 of the State Constitution and is *ultra vires* and void, because the Park Board had already incurred indebtedness for park purposes aggregating $60,000, which sum the Park Board was obligated to pay, with interest, at the time the contract with Freeman was entered into and the payment to him made; that the one mill tax yields not to exceed $22,000 per annum, and the Park Board has no other income except less than $1000 per annum derived from interest and concessions; and

Third. Because the park fund can be expended only for acquiring and maintaining free public parks, and that the Park Board in expending park funds for "a colored park, meaning a park for negroes" and threatening to expend further sums for that purpose "are threatening to act without" authority of law, and the mayor and city commissioners "have acted and are threatening to act in violation of the law in appropriating said funds for said purpose."

It is then alleged that plaintiffs have no adequate remedy at law, and that the granting of the relief prayed for will "save them from irreparable injury threatened" by defendants.

The prayer is for an injunction restraining defendants, and their successors in office, from carrying out the contract of purchase and from paying out park funds to pay the encumbrance mentioned and from "establishing and maintaining on the said land a park for negroes," and such other relief, etc.

To reverse the judgment appellants contend (1) that the law authorizing the establishment of the Park

Board was repealed, in so far as it applied to Spring-field, when the city elected to come under the Act of March 25, 1913; and (2) that the acts of the Park Board, complained of, "were *ultra vires* and void because said board in purchasing said land contracted a debt in excess of the amount authorized by law."

I. In 1903 (Laws 1903, pp. 76, 77), under the title, "An Act to provide for the establishment and maintenance of public parks in cities of the second and third class," the General Assembly passed an act which (Section 1) authorized cities of the classes mentioned to vote a tax for the establishment and maintenance of free public parks, and provided, in case a tax was voted (Section 2), for the appointment of a board of directors who were empowered (Section 5) to adopt such "by-laws, rules and regulations for their own guidance and for the government of the parks, as may be expedient, not inconsistent with this article. They shall have the exclusive control of the expenditure of all moneys collected to the credit of the park fund and of the supervision, improvement, care and custody of said parks: Provided, that all moneys received for such parks shall be deposited in the treasury of said city or village to the credit of the park fund, and shall be kept separate and apart from other moneys of such city or village, and drawn upon by the proper officers of said city or village, upon the properly authenticated vouchers of the Park Board. Said board shall have power to purchase or otherwise secure grounds to be used for parks; shall have power to appoint a suitable person to take care of said parks and necessary assistants for said person, and fix their compensation, and shall have power to remove such appointees, and shall in general carry out the spirit and intent of this article, in establishing and maintaining public parks." Other sections fix terms of office, require an annual report, authorize the acceptance of donations, and give

*Repeal by Implication.*

the power to condemn land for park purposes. This act was carried into the Revised Statutes of 1909 as Article 2 of Chapter 93, entitled, "Parks and Public Reservations." It appears in the Revised Statutes of 1919, unamended in any matter now pertinent here, as Article 2 of Chapter 80, entitled the same as in 1909.

The Act of March 25, 1913, adopted by the city of Springfield August 2, 1915 (Laws 1913, pp. 420 to 516), was passed under the title, "An Act to repeal Article 3 of Chapter 84 of the Revised Statutes of Missouri of 1909, with all amendment thereto, said article being entitled, 'Cities of the Second Class,' and to enact in lieu thereof a new article providing for the government of cities of the second class," and now constitutes Article 3 of Chapter 72 of the Revised Statutes of 1919. It is this act which appellants contend, upon its adoption in Springfield in 1915, had the effect of repealing, in so far as that city is concerned, that part of the article on Parks and Public Reservations, until that time in force in Springfield, which authorized the appointment of a Park Board, vested it with stated powers and charged it with specified duties.

There is no contention that there was an express repeal in any sense. In fact, the Commission Government Act (March 25, 1913) expressly repeals only the article which previously applied expressly to cities of the second class and constituted what is commonly called their charter. In fact that act, the Act of March 25, 1913 (Laws 1913, sec. 5, p. 425; Sec. 7973, R. S. 1919), provides that "all laws or parts of laws, or ordinances not inconsistent with this article, which were in operation in such city prior to its organization under this article, or prior to the passage of this article, shall continue in force until repealed." With respect to this first contention of appellants, the single question is whether the putting in force in Springfield of the Act of March 25, 1913, by implication repealed the article respecting "Parks and Public Reservations" in the particulars and

to the extent contended for, in so far as Springfield is concerned.

It is settled law in this State, that, "while repugnant statutes must necessarily supplant previous ones, they must be clearly repugnant, for, unless the legislative intent is expressed in terms, it will not be assumed, if any other construction can be given to the subsequent act. [State ex rel. v. Draper, 47 Mo. 29.] It is a fair presumption that if the Legislature intends to repeal a statute, it will do so in express terms, or by the use of words which are equivalent to an express repeal, and the court will not, if it can be consistently avoided, adjudge that a statute is repealed by implication. [State ex rel. v. County Court, 41 Mo. 453]." [Lang v. Calloway, 68 Mo. App. l. c. 396; approved, Gasconade Co. v. Gordon, 241 Mo. l. c. 582.] Repeals by implication are not favored. [State ex rel. v. Clark, 275 Mo. l. c. 102.] Further, in case of a repeal by implication "the old law is repealed by implication only *pro tanto* to the extent of the repugnancy." [State ex rel. v. Walbridge, 119 Mo. l. c. 389; 25 R. C. L. p. 916, sec. 167.]

The sections of the new act, as they appear in the present revision (1919), which appellants bring forward as containing provisions irreconcilably in conflict with the older Park Board law, are 7976 (pars. 11 and 36), 8018, 8023 and 8025. Section 7976 begins thus: "Every city of the second class shall have power, by ordinance, not inconsistent with the Constitution, or any law of this State or this article." Then follow seventy-two paragraphs which enumerate the things the city may do. Paragraph 11 reads as follows: "To establish, open, vacate, alter, widen, extend, grade, improve, repair, construct, pave, repave, re-construct and maintain, light, clean, oil and sprinkle all streets, avenues, boulevards, sidewalks, alleys, wharves, parks, public grounds and squares, bridges, viaducts, subways, tunnels, sewers and drains; and to regulate the use thereof." Paragraph 36 of Section 7976 gives the city power "to acquire by con-

demnation, purchase, gift, lease or otherwise property, real and personal, within such city and beyond the limits thereof for the use of the city for'' the burial of the dead, the preservation of the public health, ''for establishing and maintaining parks, parkways, boulevards, bathing places, crematories'' and many other named purposes, ''and for any other public use or purpose, and to manage and regulate the use thereof, and to sell, lease or otherwise dispose of the same.'' Section 8018 provides that ''each commissioner shall have the right to appoint all officers and employees in the department under his immediate supervision, subject to the merit system hereinafter provided in this article, and may remove said officers and employees at his pleasure.'' Section 8023 provides that ''the commissioner of public property and public utilities shall have under his special charge the maintenance and operation of all public utility plants owned by the city, and shall see to the enforcement of all regulations with respect to the same, and to the collection of all revenue derived from the same. He shall have control over all public parks and pleasure grounds in the city. He shall have charge of and supervision over the city hall and the grounds adjoining the same. He shall have charge of and supervision over grounds belonging to or controlled by the city, except as may be otherwise provided,'' and he is given charge and supervision over cemeteries ''in or belonging to the city.'' Section 8025 provides that ''all salaries and wages of appointive officers and employees of the city, unless otherwise herein provided, shall be fixed by the city council acting as a whole, and shall not become effective unless at least three members of the council shall vote therefor. The salaries of such officers and employees may be increased or decreased at any time by a vote of at least three members of the council.'' In looking into the question whether these provisions are so repugnant to the old law that the power of the Park Board and the Park Board itself are de-

stroyed, it is well to make use of the light which the Legislature itself has provided. In Section 8205, in which provision is made for the passing of a city of the third class, as Springfield was, into the new class under the new law, there appears the following: "The terms of office of the mayor, councilmen, or aldermen, assessor, collector, police judge, marshal, city treasurer, city attorney, members of the board of public works and all other officers of the city of such city of the third class *except library directors and park commissioners* in office at the beginning of the terms of office of the officials first elected under the provisions of this article shall cease and determine and end at ten o'clock a. m. on the third Monday in April following such election." It is a fair inference from this that the Legislature was not of the opinion that the Act of 1913, when adopted by a city of the third class, wiped out the Park Board. In addition, the new act expressly repealed a designated article, and that fact raises an implication that no further repeal was intended. [State v. Morrow, 26 Mo. 131.] Further, the act contains the provision, already referred to, which expressly continues in force all laws previously in force, in cities coming under the new act, "not inconsistent with this article."

The question whether the new act repeals that part of the old law which vested in the Park Board power to purchase land for park purposes for Springfield must be solved by inquiring whether the new law vests that power exclusively in some agency established by the new law and does so in such clear language that such provision of the new law is in such irreconcilable conflict with the old, in this respect, that there is no reasonable theory upon which the two can be harmonized; for the *power* of the Park Board can be held to be destroyed, by repeal by implication of the law which vests it only by such a clear vestiture of that *power* in some other agency, by the later law, that no other reasonable construction can be found. This is the necessary result of the ap-

plication of the quoted rules to this contention of appellants. The solution of the question is to be found, on this appeal, by examining the provisions of the new law relied upon by appellants to the end that it may appear whether they are, when tested by the rules mentioned, in the light of other provisions of the new act already mentioned, repugnant to the provision of the older law from which the Park Board got its power to purchase land for park purposes. Paragraph 11 of Section 7976 merely gives the city power to establish, improve, maintain and care for parks, among other things. Paragraph 36 vests the city with power to acquire land for park purposes by purchase, and by other methods. Neither of these paragraphs expressly attempts to provide a method or agency for the exertion of the powers given, nor does either of them use terms which are preclusive. It may be that the right to condemn suggests its own method in part, but this case does not involve a condemnation. Before the adoption of the Act of 1913, there was an agency expressly authorized to purchase lands for park purposes, the Park Board, and the Act of 1913, the new act, makes no pretense, in the paragraphs referred to, of creating any new agency which might displace the old in the performance of this function. The new act merely continues in the city the power to purchase land for parks. That power was not repealed, but was carried forward into the new law. It cannot be said that (Paragraph 36) a legislative act merely continuing in the city a *power* it previously had is in any way repugnant to a provision in the old law which dealt, not with the *power of the city* to purchase, as before, but with the establishment of the agency or board through which that power is to be exerted and investing it with authority as such agency to exert that power. Paragraph 11 is obviously disposed of by the same reasoning. Neither do the provisions of Sections 8018 and 8025, relating to the appointments of employees and the fixing of salaries and wages in any way deal with any-

thing connected with the Park Board's power to purchase lands for park purposes. Whatever may be their effect on other provisions of the law under which the Park Board is acting, they do not relate to the subject of purchase, and, therefore, cannot conflict with the old provision pertaining thereto. The sentence in Section 8023 which is relied on is that which provides that the Commissioner of Public Property and Public Utilities "shall have control over all public parks and pleasure grounds in the city." If this is to be construed to repeal the Park Board's power, as the city's agent, to purchase and establish parks, it must be because this language empowers the commissioner to purchase and establish parks. Unless it does so it manifestly does not give him anything which conflicts with the Park Board's power to purchase land and establish parks. If it does so, then it must be held that he is also given power to purchase land and establish a city hall and other buildings and grounds and cemeteries; for much the same form of words is used respecting these as respecting public parks. Without regard to this it seems clear that vesting in one control over a thing is far from being equal to empowering him to purchase or establish that thing. Whatever control he is given is control over the finished product and does not necessarily pertain to the power or process whereby the thing itself is brought into being. In view of the rules laid down in the cases and the plain absence of any such repugnancy between the Park Board law and the new act, in the respect in question, as would require the two to be held to be in such conflict that they are irreconcilable on any reasonable theory, this first position of appellants must be held to be untenable.

II. It is argued that even though the Park Board survives and still possesses the power to purchase land for park purposes, its action called in question in this case is without authority of law and *ultra vires* and void,

**Excessive Indebtedness.** "because said board in purchasing said land contracted a debt in excess of the amount authorized by law." This is founded upon the assumption that the fund arising out of the special tax voted under the Park Board law is the only fund that can be made available for the purchase of land for park purposes, a further assumption that when the Park Board contracted for the assumption of the debt evidenced by the deed of trust on the property purchased it legally bound the city or park fund to pay that indebtedness, or the contract of purchase was void in all respects, and the argument that the park fund "was already indebted in the sum of $60,000 and had an income of only $23,000 per year so that there was no fund or income," not "bound by contract for about three years," and that this demonstrates that the debt so contracted is in excess of the Park Board's authority and, therefore, violative of the letter and spirit of Section 12 of Article 10 of the Constitution, and of many decisions of this court construing it. If it be true that the principle invoked applies as against the attempted assumption of the indebtedness, then it results that the assumption of that indebtedness is void as a matter of law and no indebtedness at all was created by it. This leaves the grantor in the position of being secured solely by the land itself, and leaves the title to the equity in the land in the public, subject to the indebtedness mentioned. If this is the situation, and it is the situation if appellants' present contention is sound, the assumption of the debt, as a matter of law, forms no part of the contract and, consequently, affords no ground for the relief prayed. On this theory the authority of the Park Board to pay off the indebtedness with funds which may be available is not questioned in the pleadings or briefs, and further attempts to use for that purpose the funds which may not lawfully be so used can be dealt with when they are made. The point must be ruled against appellants.

This disposes of the questions raised in appellants' brief. !The judgment is affirmed. All concur, except *Woodson, C. J.,* who dissents in separate opinion.

WOODSON, C. J. (dissenting).—I dissent from the majority opinion filed in this case for the reasons stated in the divisional opinion filed by me in this case, which is as follows:

The plaintiffs instituted this suit in the Circuit Court of Greene County against the defendants to enjoin them from purchasing and paying for a certain tract of land, particularly described in the petition, to be used for park purposes.

The decree of the court was for the defendants, and the plaintiffs duly appealed therefrom to this court. The case went off upon a demurrer to the petition, and therefore it becomes my duty to set forth so much thereof as will intelligently present the legal propositions presented for determination. It was as follows:

"Plaintiffs state that they are resident tax-paying citizens of the city of Springfield, Missouri. That the defendant J. J. Gideon is Mayor and the defendants E. J. Cogley, W. H. Swinney, J. R. Ramsey and Edward S. Finch are Commissioners of the City of Springfield, Missouri, a city of the second class, organized under the laws of the State of Missouri, approved March 25, 1913, and the amendments thereto. Said last above named defendants being the duly elected, qualified and acting Mayor and Commissioners of said city and hereinafter referred to as the Mayor and City Commissioners of such city.

"That the defendants O. T. Hamlin, T. K. Bowman, I. D. Casebeer, E. G. Rathbone, E. E. E. McJimsey, A. R. Baldwin, Emmett Newton, M. V. Tyndall and J. L. Long are members of and constitute what is known as the Board of Commissioners of the Public Parks of said city, and were appointed by the Mayor and City Commissioners of such city, and are hereinafter referred to for convenience as the Park Board.

"Plaintiffs state that on the 1st day of April, 1913, that said city of Springfield was a city of the third class, organized as such under the laws of Missouri; that on said date an election was held in said city ,on the propo-. sition of levying an annual tax 'for the establishment and maintenance of free public parks in said city,' and at said election, authorized by Section 10241, Revised Statutes 1909, of the State of Missouri, duly held, a tax of one mill on the dollar-valuation of the taxable property in said city was adopted by the voters of said city for such purposes, and that ever since said date and at the present time said tax has been and is duly levied and collected on the property of these plaintiffs and all other taxpayers of said city.

"That thereafter a Board of Commissioners was selected and duly qualified under the provisions of Chapter 93, Article 2, Revised Statutes 1909; that thereafter, to-wit, on the 2nd day of August, 1915, the city of Springfield, at an election held on said day, elected to become a city of the second class by adopting the provisions of the Act of the General Assembly, of Missouri approved March 25, 1913, and thereafter proceeded to elect officers and administer the affairs of said city under the provisions of said act.

"Plaintiffs state that said act does not provide for the appointment of Park Commissioners, but confers exclusive jurisdiction of the parks of the city upon the mayor and the several commissioners thereof, and specifically places all public parks and the control and supervision thereof under the control of the Commissioners of Public Utilities of such city.

"For cause of action plaintiffs state that on or about the 27th day of February, 1919, the defendants, herein called the Park Board, without authority of law, contracted with one W. E. Freeman, the owner thereof, for the purchase of a tract of land described as Lot 25 in Jonathan Fairbank's Addition to the City of Springfield, Missouri, for the price and sum of $6500; said real es-

tate was purchased by said defendants, the Park Board, for a colored or negro park.

"That by the terms of said contract for the purchase of said real estate the said Freeman placed a deed of trust on the said real estate to secure the payment of an indebtedness of $5000 to the Citizens Bank of Springfield, Missouri, payable in installments of $1000 each in one, two, three, four and five years from said date, with interest thereon at the rate of seven per cent per annum, payable annually, which said encumbrance is evidenced by said deed of trust of record in Book — at Page —, records of Greene County, Missouri, and which said indebtedness so secured by said deed of trust said defendants, the Park Board, assumed and agreed to pay as part of the purchase price for said real estate, and paid and caused to be paid to said Freeman the sum of $1500 out of the park fund of said city, levied and collected as aforesaid, as the balance of said purchase price.

"That thereafter, on the —— day of March, 1919, the defendants, the Mayor and City Commissioners of said city, by Ordinance No. 10617, approved March —, 1919, ordered a warrant drawn on said public park fund for said sum of $1500 in accordance with the provisions of said contract of said defendants, the Park Board, with said Freeman, and the said warrant was paid to said owner of said real estate as part payment therefor.

"Plaintiffs state that said defendants are now threatening and are about to pay out of said park fund other and further sums of money in pursuance of said contract of purchase of said real estate wherein said defendants, the Park Board, contracted and assumed and agreed to pay said indebtedness of five thousand dollars and interest thereon secured by a deed of trust as aforesaid on said land.

"Plaintiffs state that said defendants, the Park Board, in making said contract and in purchasing said real estate acted wholly without authority of law and

that all of said defendants in paying and causing to be paid any money, and especially said sum of fifteen hundred dollars aforesaid, out of the park fund aforesaid on account of or by virtue of said contract so made for the purchase of said land, acted wholly without authority of law, and that said contract entered into with said Freeman and all other acts of any and all of said defendants relating to the purchase of said land were *ultra vires* and void, and that any further payments which said defendants are now threatening and are about to make on account of the purchase of said real estate are without warrant or authority of law for the following reasons to-wit:

"First: Because under the law governing the city of Springfield the Mayor of such city had no right or authority to appoint said Board of Commissioners for Free Public Parks and the said defendants, the Park Board, had and have no legal right or authority to contract for and on behalf of said city or the inhabitants thereof for the purchase of said real estate and had and have no right or authority to expend, contract for or direct the expenditure of any money belonging to said park fund of said city levied and collected as aforesaid on any account.

"Second: Because said defendants, the Park Board, had no lawful authority to obligate said city to pay out of said park fund the indebtedness secured by said deed of trust on said land or the interest thereon.

"That said contract whereby said defendants, the Park Board, assumed and agreed to pay said indebtedness of five thousand dollars and interest was in violation of Section 12, Article 10, of the Constitution of the State of Missouri, and such contract was and is *ultra vires* and void; because prior to said 27th day of February, 1919, said defendants, the Park Board, had become indebted to various persons in the purchase and improvement of other tracts of real estate theretofore acquired for park purposes in a large sum, to-wit, the

sum of sixty-thousand dollars which said sum said defendants, the Park Board, were obligated to pay with interest thereon at the date of the contract and purchase of the real estate herein described out of the park fund levied and collected as aforesaid.

"That the tax of one mill levied and collected on the taxable property in said city when collected provides a fund of not to exceed twenty-two thousand dollars per annum and that said defendants, the Park Board, has no other source of income except an amount of less than one thousand dollars per annum secured from interest and concessions.

"That by reason of the facts aforesaid said acts of said defendants and all of them relating to said purchase of said ground for said negro park were and are without authority of law and void.

"Third: Because under the law the park fund levied and collected as aforesaid could and can be expended only for acquiring and maintaining free public parks in said city, and that said defendants, the Park Board, in expending and causing to be expended the said funds for a 'colored park,' meaning a park for negroes, and in threatening to make other and further payments out of said fund on account of the purchase of said real estate for such purpose, acted and are threatening to act without warrant or authority of law in violation of the law, and that the defendants, the Mayor and City Commissioners of said city, likewise have acted and are threatening to act in violation of the law in appropriating said funds for said purpose.

"Plaintiffs state that they have no adequate remedy at law and that the granting the relief herein prayed for will save them from irreparable injury threatened by the unlawful acts of the said defendants herein complained of.

"Wherefore, plaintiffs pray the court that said defendants herein named and called the Park Board, and said defendants herein named and called the Mayor and

City Commissioners of said city, and each one and all of them and their successors in office, be perpetually restrained and enjoined from carrying out the provisions of said contract for the purchase of said real estate, and that they and each one and all of them and their successors in office be especially restrained and enjoined from paying out any part of the funds of said park fund so levied and collected for park purposes for the said encumbrance on said land and that they be perpetually enjoined from establishing and maintaining on said land a park for negroes, and for such other and further relief the court may deem proper.''

To this petition the defendants filed a general demurrer, which was by the court sustained, and the plaintiffs declining to plead further, the court rendered judgment for the defendants, dismissing said cause, and from that judgment, as previously stated, plaintiffs duly appealed to this court.

The first contention of counsel for the plaintiffs is that the respondents, the Park Board, having been appointed under the authority of Article 2, Chapter 93, Revised Statutes 1909 (same as Art. 2, Chap. 80, R. S. 1919), Article 2, Chapter 93, Revised Statutes 1909, was necessarily repealed by implication by Article 3, Chapter 72, Revised Statutes 1919 enacted in 1913. That is, the latter article repealed the former in so far as the former created such board, with its attending powers and duties.

This requires a close consideration of these two articles, because it is not contended by counsel for appellants that the law of 1909 was repealed by express terms, by the law of 1913, but, if at all by implication; that is, the law of 1913 is so inconsistent and incongruous with that of 1909, both of them cannot stand together, and consequently the latter being subsequently enacted to the former the subsequent act must prevail. And in this connection it might not be amiss to state that since the law does not favor repeals by implication, the bur-

den rests upon counsel for appellants to show the inconsistency and repugnancy to the full satisfaction of the court, before they can hope for a reversal of this case.

We shall now examine the sections of the two articles of the statutes which it is claimed are repugnant to each other. Section 10242 of Article II of Chapter 93, Revised Statutes 1909, reads as follows:

"When any incorporated city shall have decided to establish and maintain public parks under this article, the mayor of such city shall, with the approval of the legislative branch of the municipal government, proceed to appoint a board of nine directors for the same, chosen from the citizens at large, with reference to their fitness for such office; and no member of the municipal government shall be a member of said board."

And in so far as Section 10245, same article and chapter, is here concerned, it reads: "Said board shall have power to purchase or otherwise secure grounds to be used for parks; shall have power to appoint a suitable person to take care of said parks and necessary assistants for said person, and to fix their compensation" and remove the same, etc.

Section 10247 of the same article and chapter authorizes the board to accept donations for park purposes, and the succeeding section, Section 10248, provides for the condemnation of lands for park purposes.

It will thus be seen that this article provides for the acquisition of ground for park purposes by purchase, condemnation of donation, and empowers the mayor of the city, with the advice and consent of the law-making power of the city, to appoint a park board, and prescribe their qualifications, powers and duties. There are some other provisions contained in other sections of the same article, which are of no practical consequence in the consideration of this question.

We shall now examine those sections of Article 3 of Chapter 72 relating to the same subject-matter as those found in Article 2 of Chapter 72, Revised Statutes 1919.

They are Sections 7976, Subdivisions XV and XXXXI, and cities of the second class by the former section are given power among other things: ''To procure by purchase, condemnation, gift or otherwise, within the city or beyond the limits thereof, property for use of the city in and for the performance of its functions, and manage and regulate the use thereof; and to sell, lease or otherwise dispose of the same.'' The latter section provides among other things that such cities shall have power to acquire by condemnation, purchase, gift, lease or otherwise, property real and personal, within or beyond the limits thereof for the use of the city . . . for the purpose of establishing and maintaining parks, park-ways, boulevards, bathing places,'' etc.

And Sections 8018, 8023 and 8025 of same article and chapter are enactments along the same lines.

The first authorities the commissioners of the city to appoint all officers and employees in the departments under the supervisor, and the second section mentioned provides that the Utilities Commissioner ''shall have control over all public parks and pleasure grounds of the city'' and buildings adjacent thereto, and the last section of the three provides that the salaries of the officers and employees of the city shall be fixed by the city council.

By reading these Sections of the statute of 1919, it will be seen that they not only cover or revise all the matters referred to in the Revision of 1909 before referred to regarding parks and the things incident thereto, but they cover many more subjects of kindred nature.

The most casual observation will disclose the fact that the things required to be done by the 1909 Statutes regarding the formation of parks, their maintenance and control and their officers employees, etc., will discover that the Statutes of 1919 also provide for the formation of parks, their maintenance and control, and provide for the appointment of their officers and employees, etc., and that too in substance, if not in almost the same lan-

guage.  So it is perfectly clear that if both statutes are to be given force and effect, then we would have in cities of the second class two systems of parks, whose management and control would be by different sets of offi-cers and employees.  That being true there must be a repeal of the 1909 statutes by those of 1919, because they are inconsistent and repugnant to each other.  And whenever that occurs this court has in a number of well considered cases held that the former is repealed by the latter.

In the case of State v. Roller, 77 Mo. 120, syl. 1, this court said: ''A statute revising the whole subject-matter of a former statute and evidently intended as a substitute for it, although it contains no express words to that effect, repeals the former.''

The following cases also decide the same point: State ex rel. v. Patterson, 207 Mo. 129, 1. c. 145; Yall v. Gillham, 187 Mo. 393, 1. c. 405; Delaney v. Police Court, 167 Mo. 667, 1. c. 676; Meriwether v. Love, 167 Mo. 514, 1. c. 521; Kern v. Legion of Honor, 167 Mo. 471, 1. c. 484; State v. Summers, 142 Mo. 568, 1. c. 595 and others too numerous to mention.

Learned counsel for the respondents have with much learning and ability given a careful review of the history of all the legislation governing cities of the second class, from the beginning down to the Act of 1913 (Sec. 55, p. 455, Laws 1913) and undertake by that process of reasoning to show that the latter section is incon-sistent with all the other laws cited from the Acts of 1913 before referred to in Article 3 of Chapter 72, Re-vised Statutes 1919.  I have previously referred to Sec-tion 8023, Revised Statutes 1919, which is Section 55, page 455, Laws 1913, and tried to show that there was no inconsistency or repugnancy between it and any of the other sections of that act or between it and Article 3 of Chapter 72, Revised Statutes 1919, which are one and the same, as I understand it.  It simply undertakes to create an officer who shall have care, custody and con-

trol of the parks of cities of the second class, and has nothing whatever to do with their creation. It therefore cannot be in conflict with the other statutes mentioned which provide for the procurement of property for the purpose of creating parks nor the other employees who are to look after them.

On account of the public nature of these parks and the great blessings and pleasures they furnish to the inhabitants of these cities and especially to the children and the old and sick people, I deeply regret that I feel constrained to reverse the judgment of the circuit court and remand the cause with directions to enter a decree permanently enjoining the defendants from proceeding with the purchase of the land and establishing the park.

I wish to add by way of query, that if this park is not the property of the city of Springfield, nor subject to its regulation or control, as I understand the majority opinion to hold, then under Section 46 of Article IV of the Constitution of 1875, I wish to know where the old Park Board, mentioned in the majority opinion, is going to procure the revenue with which to maintain the park and pay the salaries of the officers and the wages of the laborers who so manage and control and keep up the same?—for the reason that said section of the Constitution in express terms provides that "the General Assembly shall have no power to make any grant, or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporations whatsoever."

This Park Board must be an individual, or an association of individuals or a corporation, within the meaning of that provision of the Constitution.

I predict that when the taxes are levied by the city of Springfield and attempted to be collected or expended for the purposes mentioned, the questions now involved in this case will again appear here and greatly vex and torment us no little; but I see my learned associates are obeying the divine mandate of the Lord, when He says,

"Take no thought of the morrow, for the day is sufficient unto the evil thereof."

While I do not disagree with the Lord's injunction to wait, but he did not say the evil of that day may not be difficult of solution when presented.

I therefore dissent from the majority opinion.