HELEN GWARTNEY, AN INFANT BY HER NEXT FRIEND, MILDRED E. RHONE, RESPONDENT, v. CITY OF SPRINGFIELD, MISSOURI, A MUNICIPAL CORPORATION, APPELLANT.—93 S. W. (2d) 62.

Springfield Court of Appeals. March 3, 1936.

Rehearing denied. April 15, 1936.

Kirby W. Patterson for appellant.

Charles M. Farrington, M. O. Morris and L. L. Collins for respondent.

SMITH, J.—This is a suit wherein the plaintiff seeks damages for personal injuries. Judgment was had for $750 and defendant in proper time and form appealed to this court.

The case is before us upon an agreed statement, which is as follows:

"It is hereby stipulated and agreed by and between the parties to the above-entitled cause that the facts in this case are as follows:

"FIRST, that since the year 1921 there has been located in the City of Springfield, Missouri, immediately east of the Federal Building a public park known as Long Memorial Park, which is a part of the public park system for the City of Springfield, created under the authority of Chapter 129, Revised Statutes of Missouri, 1929.

"SECOND, that on or about July 10, 1933, the plaintiff, a child of seven years, was injured on the sliding board located in said park, while there as an invitee.

"THIRD, that the said sliding board was on said date, and had been for a long time prior thereto, in a dangerous and unsafe condition, and that such dangerous and unsafe condition was the proximate cause of plaintiff's injury.

"FOURTH, that the title to said Long Memorial Park is and was on July 10, 1933, in the members of the Springfield Public Park Board, naming them in their official capacity, and their successors in office.

"FIFTH, that the said park board appoints the employees and controls the management of said park.

"SIXTH, that on July 10, 1933, the Springfield Public Park Board had been duly appointed by the mayor of said city, and said appointments approved by the city council, and they had qualified and were the legally acting park board and in the control of said park under the authority of Chapter 129, Revised Statutes of Missouri, 1929.

"SEVENTH, it is further agreed that no controversy exists as to the correctness of the pleadings or the procedure which led up to the returning of the jury's verdict herein set forth, or as to the amount of such verdict, and that the only point now in controversy is whether the trial court erred in refusing defendant's instruction in the nature of a demurrer to the evidence offered at the close of all the evidence, which demurrer was based on the contention that said park was owned and controlled by the Springfield Public Park Board and that said body was an independent board, not under the control or supervision of the defendant, City of Springfield, and that the city therefore would not be liable for its negligence or the negligence of its servants and employees.

"Chas. M. Farrington,

"L. L. Collins,

"Attorneys for Plaintiff.

"Kirby W. Patterson,

"Attorney for Defendant."

The sole question before us is, should said demurrer have been sustained? And it appears from the briefs of the parties that this particular question has never been specifically passed on by the ap-

pellate courts of this State. At any rate we have not been cited a case in this State squarely in point, nor have we found one.

We find from reading 19 R. C. L., Section 407, page 1129 and the cases cited thereunder, that there are two distinct theories in the various states as to how parks are considered by the courts in these various States. One theory is that parks and other property acquired by a municipality for public recreation and amusement are held by it in its governmental capacity, and the other theory held in some States is that the parks are looked upon as the private property of the city, and the city is held responsible for their management to the same extent as a private proprietor. And Ruling Case Law under said section 407, by inference at least, places Missouri within the class of States holding to the second theory, or that the cities are classed as private proprietors of the parks. Two leading cases within this State in which the Supreme Court by its holdings, if not by specific language, placed Missouri in the second class. These cases are Carey v. Kansas City, 86 S. W. 438; 70 L. R. A. 65, and Capp v. St. Louis, 158 S. W. 616, 46 L. R. A. (N. S.) 731.

The appellant states its position in this case under its one point under "Points and Authorities" as follows, "A municipal corporation is not liable for the acts or omissions of an independent board or of its servants and agents," and contends here that the Park Board is such an independent board that the city is not liable for its torts. Many cases are cited in an attempt to sustain this point. We have no fault to find with the general statement made, nor with the authorities cited in support thereof, but we are of the opinion that much depends upon whether or not the Springfield Public Park Board is *an independent board*, or a part of, or branch of, or agent of the city, and if the latter, then defendants declaration under its 'Points' and Authorities will not apply, and its authorities cited are not in point.

Realizing, as heretofore said, that the appellate courts of this State have never definitely passed on this question so far as we have been cited or have been able to find, yet we are forced to the conclusion that the park board is not such an independent board as to render it an organization wholly separate and apart from the city government to such an extent that the city will not under any circumstances be held liable for its torts.

We base our conclusions upon the following statutory provision: (1) Parks are created within city limits for the benefit of the entire city; (2) It is provided with funds by vote of the people of the city and by a levy annually of taxes by the city council in such amount, within limits, as the council deems sufficient. [Sections 14238, 14240, R. S. 1929, Mo. Stat. Anno., pp. 6150, 6151.] (3) The members of the park board are appointed by the mayor with the consent of the

council, section 14241, Revised Statutes 1929, Mo. Stat. Anno., p. 6152, and may be removed by the mayor with the consent of the council for misconduct or neglect of duty. [Sec. 14241, R. S. 1929.] If vacancies occur in the park board such vacancy shall be reported to the city council and be filled in like manner as original appointments. [Sec. 14243, R. S. 1929.] (4) This board shall make annual reports to the city council showing the various sums of money received from the park fund and from all other sources, and how such moneys have been expended and for what purposes. The report of receipts and expenditures must be verified by affidavit. [Sec. 14245, R. S. 1929.]

We think these sections of the statutes setting out the duties of the park board clearly show the park board to be a part of the city management and not a separate board segregated from the management of the city.

Under the provisions of Section 6486, Mo. Stat. Ann., 1929, p. 5477, every city of the second class shall have power by ordinance, under paragraph XI of said section, "to establish, open, . . . parks, public grounds and squares . . . and to regulate the use thereof." And under the provision of paragraph XV of said section 6484 the city is given the right "To procure by purchase, condemnation, gift or otherwise, within the city or beyond the limits thereof, property for use of the city, *in and for the performance of its functions* (italics ours), and to manage and regulate the use thereof; and to sell, lease or otherwise dispose of the same." Paragraph XXXVI of said section 6486 is as follows:

"To acquire by condemnation, purchase, gift, lease or otherwise, property, real and personal, within such city and beyond the limits thereof for the use of the city in and for the performance of its functions for the burial of the dead of such city, for the preservation of the health of its inhabitants, for the purpose of establishing and maintaining parks, parkways, boulevards, bathing places, crematories, abattoirs, hospitals, poorhouses, detention or pesthouses, garbage collection and garbage disposition and reduction works and equipment; for the erection, construction, maintenance and operation of waterworks to supply the city and its inhabitants with water; for the erection, construction, maintenance and operation of gas plants and systems, heat plants and systems, electric light plants and systems, telephone or telegraph plants and systems and electric for other power plants and systems to be used in supplying the city and its inhabitants with light, heat and power; and for any other public use or purpose, and to manage and regulate the use thereof; and to sell, lease or otherwise dispose of the same."

Under paragraph 51 of said section 6486 the city is authorized to provide for lighting of its parks both within and outside of the city.

You will note that in quoting paragraph XV above we italicized the words *in and for the performance of its functions,* and we find that

the exact words are used in paragraph XXXVI above quoted, and following which words is a list of the functions of the city of this class. Among the functions designated in this paragraph is the acquiring of property for the purpose of establishing and maintaining parks, parkways, boulevards, etc.

The above provisions of the statute show clearly to our mind that the acquiring of parks and the maintenance thereof were considered by the legislators as a part of the functions of the city.

Section 14247, Mo. Stat. Ann., 1929, p. 6153 clearly places upon the mayor and the legislative branch of the city government the power to condemn land for the purpose of establishing parks.

In saying what we have above we are not unmindful of the provisions of Section 14244, Mo. Stat. Ann., 1929, which are as follows:

"Said directors shall, immediately after appointment, meet and organize by the election of one of their number president, and by the election of such other officers as they may deem necessary. They shall make and adopt such by-laws, rules and regulations for their own guidance and for the government of the parks as may be expedient, not inconsistent with this article. They shall have the exclusive control of the expenditure of all moneys collected to the credit of the park fund and of the supervision, improvement, care and custody of said parks: PROVIDED, that all moneys received for such parks shall be deposited in the treasury of said city or village to the credit of the park fund, and shall be kept separate and apart from other moneys of such city or village, and drawn upon by the proper officers of said city or village, upon the properly authenticated vouchers of the park board. Said board shall have power to purchase or otherwise secure grounds to be used for parks; shall have power to appoint a suitable person to take care of said parks and necessary assistants for said person, and fix their compensation, and shall have power to remove such appointees; and shall in general carry out the spirit and intent of this article in establishing and maintaining public parks. [R. S. 1919, sec. 9216.]"

We think the *exclusive control* of the expenditure of moneys mentioned in that section does not mean at all that the park board is an independent organization separate and apart from the city with power to collect and spend the funds as an independent and separate municipal corporation could do. We think it means simply that its powers are separate and apart from any other board or branch of the city government. This section provides that the funds are to be kept separate and apart from other funds of the city, but the park board is not given power to draw out any part of these funds. It may make vouchers for the amount, but must submit these vouchers to the proper officers of the city, and the city officers, only, may draw upon the funds. This section says "Said board shall have power to

purchase or otherwise secure grounds to be used for parks," but that does not imply that said purchases shall be separate and apart from any action on the part of the city, for the same section of the statute provides that all moneys used in connection with parks must be drawn upon by the proper officer of the city.

We cannot escape the conclusion that the park board is a part of the city organization, and that in performing its duties, it acts as the arm of, or agent of the city, and the city may be chargeable with the park board's misfeasance and nonfeasance. Our Supreme Court in the case of Wrightsman v. Gideon et al., 247 S. W. 135, while not passing on the particular question involved in this case did on several occasions, on page 139 thereof, refer to the park board as an *agent* or *agency* of the city.

It is our conclusion that the judgment should be affirmed. It is so ordered. *Allen, P. J.*, and *Bailey, J.*, concur.