THE STATE v. EDWARD TAYLOR, Appellant.—18 S. W. (2d) 474.

Division Two, June 4, 1929.

*Fred A. Gossom* for appellant; *Joe F. Callahan* and *Robert J. Callahan* of counsel.

18

*Stratton Shartel*, Attorney-General, and *Henry Depping*, Assistant Attorney-General, for respondent.

BLAIR, P. J.—Appellant, together with Elmer Schneider and Joseph Buschman, was charged with the crime of robbery in the first degree, as defined by Section 3307, Revised Statutes 1919. A former conviction of felony was alleged against each defendant, thus bringing the case within Section 3702, Revised Statutes 1919, usually referred to as the Habitual Criminal Act. Appellant was separately tried and found guilty of robbery as charged, and also guilty of a prior conviction of felony, as also charged in the information. His punishment was accordingly assessed by the jury at imprisonment in the penitentiary during his natural life. He was granted an appeal from the judgment entered on such verdict.

A brief statement of the evidence will suffice. William G. Nicklin was president of Nicklin Tannery Company, doing business at 409 South Second Street in the city of St. Louis. At about 12:30 P. M., on Saturday, August 13, 1927, Mr. Nicklin was in his office at that place making up the weekly pay roll for the employees of the Tannery Company, when four or five men armed with pistols appeared at the office and took from him over three hundred dollars in money, belonging in part to him and in part to his company, and departed in an automobile previously parked in the alley at the rear. Nicklin did not identify appellant as one of the men who took the money. However, he did identify Buschman, appellant's co-defendant, as one of the men.

An eighteen-year-old negro boy, named Ol'Dell Slattery, testified on behalf of the State that he worked as pony boy for one John Berne, who conducted a blacksmith shop in the alley in the rear of 415 South Second Street; that on the forenoon of the robbery appellant drove and parked in the alley near the shop a gray colored Hudson automobile; that appellant, Buschman, Schneider and others were frequently at this blacksmith shop; and that these men were around the shop on the day of the robbery until about 12:30 P. M.; that they then all armed themselves with pistols and left the shop; that appellant went to the Hudson automobile and remained there, while Buschman, Schneider and the others went toward the Nicklin Tannery; that in about five minutes these men came running into the alley carrying a sack and entered the automobile in which appellant was seated at the time with the engine running; that they immediately drove out of the alley and disappeared. Appellant was arrested the next morning, but had only a few dollars and no weapon of any character upon his person.

The record of a former conviction of appellant for the crime of robbery in the city of St. Louis was put in evidence, together with the penitentiary record showing his discharge from that institution. Appellant was identified as the Edward Taylor mentioned in said records by the officer who arrested him upon the former occasion and by the record of his finger prints.

Appellant took the witness stand and contented himself with stating his age (twenty-two years) and giving his place of residence. He offered several witnesses who testified to his presence in Webster Groves and later at his uncle's home in St. Louis County on the day of the robbery. The period thus covered included not only the time of the robbery, but some hours before and after it was committed.

A witness was also offered by appellant in an attempt to impeach the witness Slattery. This witness said that Slattery told her he

could not identify appellant as one of the robbers. Slattery was recalled and denied having made any such statement. Apparently he had testified substantially to the same facts at the preliminary examination, yet no other effort was made to impeach his testimony.

The case was peculiarly one for the jury. If it believed the testimony of Slattery, it had the undoubted right to find appellant guilty. Had it believed appellant's alibi witnesses, it should, and doubtless would, have found appellant not guilty. The testimony of Slattery and that of appellant's alibi witnesses was utterly inconsistent. Both could not be true. The trial court approved the verdict as not being against the weight of the evidence. The evidence tending to establish appellant's guilt was substantial and, unless some procedural error was committed of which appellant is here entitled to complain, we are not authorized to set aside the judgment rendered on the jury's verdict.

Appellant contends that Section 3702, Revised Statutes 1919, which we have referred to as the Habitual Criminal Act, was repealed by implication by Laws of 1927, page 173. Said Section 3702, so far as here applicable, reads as follows:

"If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be discharged, either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any offense committed after such pardon or discharge, he shall be punished as follows: First, if such subsequent offense be such that, upon a first conviction, the offender would be punishable by imprisonment in the penitentiary for life, or for a term which under the provisions of this law might extend to imprisonment for life, then such person shall be punished by imprisonment in the penitentiary for life; . . ."

Section 1 of Laws of 1927, page 173, reads as follows:

"If any person shall be convicted of committing a felony, or attempting to commit a felony, while armed with a pistol or any deadly weapon the punishment elsewhere prescribed for said offense in the statutes and laws of the State of Missouri for the felony of which he is convicted shall be increased by the trial judge by imprisonment in the state penitentiary for two years. Upon a second conviction for a felony so committed such period of imprisonment shall be increased by ten years; and upon a third conviction for a felony so committed such period of imprisonment shall be increased by fifteen years. Upon a fourth or subsequent conviction for a felony so committed the person so convicted shall be imprisoned for life."

Appellant was charged with robbery in the first degree under Section 3307, Revised Statutes 1919, and appropriate allegations to bring him under Section 3702 were also made in the information. By Section 3310, Revised Statutes 1919, the punishment for first degree robbery was fixed only at imprisonment in the penitentiary not less than five years. Section 3310 was repealed by Laws of 1927, page 174, and a new section of the same number was enacted in lieu thereof and, so far as the punishment provided for robbery in the first degree is concerned, reads as follows:

"Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon shall suffer death, or be punished by imprisonment in the penitentiary for not less than ten years, and every person convicted of robbery in the first degree by any other means shall be punished by imprisonment in the penitentiary for not less than five years. . . ."

The only change in the punishment is that new Section 3310 increased the minimum punishment to ten years in prison and authorized imposition of the death penalty, where a first degree robbery is committed "by means of a dangerous and deadly weapon." When the crime is robbery in the first degree "by any other means" the punishment remains the same as was provided for first degree robbery before the enactment of new Section 3310.

In substance, Section 3702, Revised Statutes 1919, requires the jury, upon conviction for any offense, to impose as punishment the maximum penalty provided by law for such offense, providing it is alleged and shown that the defendant has previously been sentenced upon a conviction of any offense punishable by imprisonment in the penitentiary or of an attempt to commit such an offense, has thereafter served out his sentence and has been finally discharged. The character of the prior conviction and the nature of the subsequent charge are not controlling so long as the first offense was punishable by imprisonment in the penitentiary or was an attempt to commit such an offense.

By Section 1, Laws of 1927, page 173, the General Assembly picked out certain offenses, to-wit, felonies and attempts to commit felonies "while armed with a pistol or any deadly weapon," and provided that the punishment fixed by the jury for such offense should be increased by the trial judge by two years' additional imprisonment and that, upon conviction for subsequent offenses of the same character, longer terms of imprisonment should be imposed. The section does not require that the offense be committed by the use of a pistol or other deadly weapon, but merely that it was committed while the accused was armed with such a weapon.

It certainly cannot be said that the 1927 Act 'repeals or purports to repeal Section 3702, Revised Statutes 1919, in so far as it covers felonies or attempts to commit felonies by means other than those where the offender is armed with a pistol or other deadly weapon. But Section 3702 and the 1927 Act relate to the same subject and both, under certain circumstances, authorize the imposition of punishment in addition to the ordinary punishment for the crime committed. Neither statute affects the nature of the crime of which the accused on trial may be found to be guilty. But both affect the extent of the punishment which may be imposed. The two acts should be construed so that each may stand and be given effect, if possible. The later statute should be construed to repeal the former only in so far as the two acts may be found to be in conflict. [Wrightsman v. Gideon, 296 Mo. 214, l. c. 223, 247 S. W. 135, and cases cited.]

We fail to find any conflict between the two statutes, although it is perfectly apparent that both cannot be effectively applied to the punishment in all cases at the same time. For example, a defendant might be sentenced to death for robbery in the first degree, accomplished by means of a dangerous and deadly weapon, under the provisions of Section 3310, Laws of 1927, page 174, so that such defendant could undergo no additional punishment under Section 3702, although it was alleged and proved that he had previously been convicted of a felony.

So also cases might occur where, if the provisions of Section 3702 were applied, no additional punishment could be effectively added by the trial judge under the provisions of Section 1, Laws of 1927, page 173. Suppose, a defendant had suffered a previous conviction for a felony or an attempt to commit a felony and was afterwards charged and convicted of burglary in the first degree while armed with a pistol or other deadly weapon. Under Section 3702, the jury would be required to assess his punishment at life imprisonment. The provisions of Section 1, Laws of 1927, page 173, could not be effectively applied.

But there are many felonies for which the term of imprisonment is limited. If the defendant committed such a felony while armed with a pistol or other deadly weapon and it was alleged and proven that he had been previously convicted of a felony, the maximum term of imprisonment, provided for the felony for which he was on trial under Section 3702, could be increased by the trial judge under the provisions of Section 1, Laws of 1927, page 173, and both statutes could thus be given full force and effect.

Hence, we conclude that there is no inconsistency or conflict between the two statutes. Conflict is not engendered by the mere fact

that there may be cases where the provisions of both statutes cannot be applied effectively. The punishment which may be imposed for robbery in the first degree where the accused has been previously convicted of a felony has not been reduced by the provisons of Section 1, Laws of 1927, page 173. One guilty of that offense and subject to have life imprisonment imposed upon him therefor under the provisions of Section 3702, Revised Statutes 1919, is in no position to complain because the State can impose no term of imprisonment having any terrors for one already sentenced to life imprisonment or death.

The information in this case did not allege that the robbery charged against appellant and his co-defendants was committed "by means of a dangerous and deadly weapon." In the absence of such allegation, the graver penalty under Section 3310, Laws of 1927, page 174, could not have been imposed. The State could waive the right to try appellant for his life and content itself with a charge of robbery in the first degree, which would only subject him to the possibility of life imprisonment as the maximum penalty. Certainly appellant cannot complain of the State's leniency in that respect.

Appellant complains in his brief because a statement as to his religious belief and a recital concerning his commitment to the "Boonville Reformatory," which were attached to his penitentiary record, were improperly admitted in evidence. We have carefully examined the motion for new trial and find no specific assignment of that character. Outside of two specific assignments of error in admitting proof of appellant's Bertillon record and his identification as the person of the same name previously convicted, which will be noticed later, the only assignment of error as to the admission of testimony is too general to comply with Section 4079, Laws of 1925, page 198. The assignment cannot be considered.

The final complaint made in appellant's brief is that the trial court should have granted a new trial because of newly discovered evidence.  Affidavits of George S. McClinton and John J. Berne were filed. The McClinton affidavit tended to show appellant's whereabouts during work hours from August 1st to August 11th. The allegation and proof in the case were that the robbery was committed August 13th. Such proof therefore had no tendency whatever to prove that appellant was not at or near the scene of the robbery at the time it occurred.

The affidavit of Berne was to the effect that appellant was not about his blacksmith shop on the morning of the robbery at and prior to the time it occurred and that appellant was not the man who remained in the automobile in the alley and drove away with the

robbers. The trial court properly refused to grant a new trial on the ground of such alleged newly discovered evidence. Appellant filed no affidavit that the evidence of Berne was not known to him at the time of the trial. No diligence whatsoever to discover such evidence before the trial was shown. It is not shown that Berne was out of the city of St. Louis at any time. The witness Slattery had testified at the preliminary hearing that appellant was about Berne's blacksmith shop for sometime on the day of and prior to the robbery and was with Berne at the shop and the slightest conception of the damaging character of Slattery's testimony, known in advance of the trial, would have suggested the desirability and indeed the necessity of finding out what Berne would testify to in that connection. Appellant utterly failed to comply with the rules governing the granting of new trials upon the ground of newly discovered evidence. Respondent cites State v. Smith (Mo. Sup.), 247 S. W. 154, l. c. 157, where the general rule is well enough stated and numerous supporting cases are cited. The assignment is without merit.

Appellant made a great many assignments of error in his motion for new trial. Some of them are a mere ringing of the changes upon contentions we have already noticed. Numerous others are too general in character to comply with Section 4079, Laws of 1925, page 198, and do not preserve for appellate review the questions thus sought to be raised. Some of the others will be briefly noticed.

Assignments directed to the weight of the evidence were directed to the attention of the trial court. We have held that there was substantial evidence to support the verdict and this court cannot disturb the verdict on account of the weight of the evidence, even if it be true, as appellant so strenuously insisted in the trial court, that the verdict of the jury is not supported by the weight of the testimony.

Complaints as to improper argument and remarks of counsel for the State are mostly too general to be entitled to consideration in any event and, where they are specific, there is nothing in the bill of exceptions to prove the assignments. Neither the argument of the State's counsel as a whole nor parts thereof, objected to by appellant, appear in the bill of exceptions.

Complaint was made in the motion for new trial of the admission in evidence of the information and other records in the former conviction, together with the identification of appellant as the same person who had been previously convicted of a felony. Without examining the record to see if proper objections and exceptions were entered (and respondent contends they were not), it is manifest that objections to such testimony were without merit because the fact of such former

conviction and appellant's identity as the person so convicted was one of the issues which it was necessary for the State to establish in order to prove the allegations of the information and bring appellant under the Habitual Criminal Act.

Error was assigned to the exclusion of testimony offered by appellant. No specific assignments of that character appear in the motion for new trial and the question is not properly before us for consideration.

The ruling of the court in sustaining the State's challenge to juror Curran is assigned as error. The record covers only the examination and dismissal of juror No. 13. Assuming that Curran was juror 13, upon which the record is silent, we think the court properly excused said juror because he said that he did not think he could follow the law and impose life imprisonment for robbery in the first degree in accordance with the Habitual Criminal Act. This certainly was ample ground for excusing the juror from the trial panel.

The Habitual Criminal Act (Sec. 3702, R. S. 1919) is assailed as unconstitutional. Without examining the record to determine whether respondent is correct in its contention that such constitutional question has not been properly raised and preserved, it suffices to say that the constitutionality of said statute has already been fully determined. See State v. Moore, 121 Mo. 514, 26 S. W. 345; also the decision of the United States Supreme Court, in the same case, Moore v. Missouri, 159 U. S. 673.

The information properly charged appellant and his codefendants with robbery in the first degree, after alleging the prior conviction of each defendant so as properly to invoke the provisions of said Section 3702 as to punishment. The verdict returned by the jury was responsive to the charge contained in the information, and not only found appellant guilty of robbery in the first degree, but made a specific finding that he had been previously convicted as charged. The judgment on such verdict was entered in due and proper form, after defendant had been accorded all his legal rights.

We find no reversible error in the record and the judgment must be and is affirmed. All concur.