**STATE of Missouri, Respondent,**

v.

**Leonard NOLAN, Appellant.**

**No. 46311.**

Supreme Court of Missouri,

Division No. 1.

Oct. 13, 1958.

Leonard Nolan, appellant, in pro. per.

John M. Dalton, Atty. Gen., J. Richard Roberts, Special Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Appellant, Leonard Nolan, hereafter referred to as the defendant, was found guilty of the offense of murder in the second degree. The jury also found that he had been convicted of a prior felony and hence the maximum penalty of life imprisonment was specified in the verdict. Sections 559.030 and 556.280(1) (all statutory references are to RSMo 1949, V.A.M.S.). Defendant has appealed from the ensuing judgment.

Defendant has filed herein, pro se, a document which purports to be a brief. Our examination of that document reveals that it violates our rules in many respects, contains much that is irrelevant, attempts to raise points that were not presented in the trial court, and contains nothing which would appear to aid the defendant's cause (or the court) upon this appeal. Under the circumstances, we will disregard the brief and review the assignments of error specified in the motion for new trial. State v. Mace, Mo.Sup., 295 S.W.2d 99; State v. Hendrix, Mo.Sup., 310 S.W.2d 852.

The evidence indicates that defendant and Helen Nolan had lived together apparently as husband and wife since 1943. Helen was the daughter of the deceased, Ollie Trice. Deceased is described as a deaf mute. She could utter sounds or scream but could not talk. Members of her family communicated with her by sign language and others conveyed messages by written notes. On July 5, 1955, Helen and defendant had an argument and Helen left the apartment where they lived. During the next several weeks defendant endeavored to get Helen to return to him but was unsuccessful.

On August 9, 1955, at about 8 a. m., defendant went to decedent's apartment and handed her a note. Shortly thereafter he left the Trice apartment. Decedent then took a blanket and cloth bag and also left the apartment apparently for the purpose of going to the defendant's apartment and obtaining her daughter's clothes. At about 10 a. m., the manager of the apartment building in which defendant lived heard two or three shots followed by a scream. She looked out her door and saw defendant walking rapidly down the hallway. The police were called and upon arrival found deceased in defendant's apartment seriously wounded. She was suffering from bruises and lacerations of the head and from gunshot wounds. Deceased was removed to a hospital and operated upon but died later that day as a result of the gunshot wounds.

After making an investigation of the shooting the police department issued a "pick-up" order for the arrest of the defendant. He was not taken into custody, however, until the early morning of September 1, 1955, when he voluntarily surrendered himself at the police headquarters in Kansas City, Missouri. At that time he gave the police a written statement which was admitted in evidence at the trial. Therein he stated that the deceased had come to this apartment on the morning in question and had given him a note wherein she requested that Helen's clothes be given to her. He stated that he did not give her the clothes because "I knew it wouldn't do any good to have the clothes because I had cut them up." When asked what happened thereafter defendant said that he "went to the clothes closet and got some of Helen's dresses and showed Mrs. Trice how they were cut and she got mad. I put the dresses back in the closet and when I turned around she had a revolver in her hand, pointing it at me. I grabbed a ball bat that we had used to prop the window up and struck her twice on the head. She fell on the bed and then to the floor. She dropped the gun and I picked it up and fired two shots at her. I then ran out the door. Question: What did you do with the gun? Answer: I sold it to a man in Blue Island,

Illinois for $7.00." Defendant did not testify at the trial.

The information in this case charged murder in the first degree but no instruction on that offense was given to the jury. The cause was submitted to the jury upon instructions which authorized a conviction for either second degree murder or manslaughter. Three of the assignments in the motion for new trial deal with the sufficiency of the evidence and will be dealt with together. It is said that the court erred in overruling defendant's motion for a directed verdict because the State failed to prove an "intent to commit any crime," and erred in giving an instruction on murder because there was no evidence of malice or premeditation, and that the verdict of the jury was not based upon facts but "upon inference upon inference upon inference."

■ A reading of the brief factual statement we have set out herein should be sufficient to demonstrate that the three assignments under consideration are without merit. Defendant admitted that deceased had dropped her gun and fallen to the floor after he had struck her twice on the head with a baseball bat and that he then picked up her gun and fired two shots into her body. There were no witnesses to the occurrence. The facts and circumstances detailed raise a presumption of murder in the second degree. State v. Smith, Mo.Sup., 240 S.W.2d 671. The elements of malice and premeditation may be inferred from the circumstances surrounding the homicide. State v. Johnson, 362 Mo. 833, 245 S.W.2d 43. We accordingly rule these assignments against defendant.

■ Assignment 4 of the motion for new trial complains of the error of the trial court in "permitting either the charge of first degree or second degree murder to stand against this defendant since there was no probable cause shown by admissible evidence before the Magistrate at the preliminary hearing of malice or premeditation." In that connection we note that defendant filed a motion to quash the information, and upon the hearing thereof, the transcript of the evidence taken at the preliminary hearing was admitted in evidence. We have read that transcript and find that the essential facts were shown at the preliminary hearing in substantially the same manner as they were shown at the instant trial. Therefore, our ruling upon the preceding assignments would appear to be decisive of the instant contention. Assuming (but not deciding) that the defendant may question the sufficiency of the evidence presented at the preliminary hearing by motion to quash the information, we hold that such evidence (including the confession) was sufficient to indicate probable cause of defendant's guilt. Lambus v. Kaiser, 352 Mo. 122, 176 S.W.2d 494.

■ Defendant was charged in the amended information with having been previously convicted of the felony of manslaughter and sentenced to serve a term of five years in the intermediate reformatory for young men at Jefferson City, Missouri. The action of the trial court in permitting the introduction of evidence of the prior conviction is assigned as error. In support of that contention it is pointed out that defendant was "sentenced to, and served a sentence in, the reformatory and not the penitentiary." In that connection we note that the prior conviction described in the so-called Habitual Criminal Act (Section 556.280) must be for an offense "punishable by imprisonment in the penitentiary." The offense of manslaughter is so punishable. The fact that defendant was sentenced to serve (and did serve) his term in the intermediate reformatory would not make Section 556.280 inapplicable. See State v. Cerny, Mo., 248 S.W.2d 844, and cases cited therein.

■ Another reason assigned for the exclusion of evidence of the prior conviction was its remoteness since it occurred more than 22 years before the instant charge was filed. We ruled a similar contention adversely to the defendant in the

case of State v. Humphries, 350 Mo. 938, 169 S.W.2d 350. Since Section 556.280 does not contain a maximum time limit within which the prior conviction shall have occurred, we have the view that the remoteness of such prior conviction would not affect the admissibility of evidence of the prior conviction.

▮ Defendant also states in his motion for new trial that the allegation and proof concerning said prior conviction "invades the constitutional rights of privacy of this defendant." We assume that by the quoted portion of said assignment the defendant intended to raise the question that the Habitual Criminal Act is unconstitutional. In presenting that contention to the trial court defendant cited no authority in support thereof. In that connection we note that the constitutionality of our Habitual Criminal Act has already been determined and has been reaffirmed in a number of cases. See State v. Moore, 121 Mo. 514, 26 S.W. 345; Moore v. State of Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301; State v. Taylor, 323 Mo. 15, 18 S.W.2d 474; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327; State v. Thompson, Mo.Sup., 299 S.W.2d 468. The argument advanced in the instant case in support of the contention that the statute is unconstitutional is quite novel and obviously without merit.

▮ "The right of privacy is concisely defined as the right to be let alone. It has also been defined as the right of a person to be free from unwarranted publicity, and as the right to live without unwarranted interference by the public in matters with which the public is not necessarily concerned." 41 Am.Jur., Privacy, Section 2, page 925. We have held that the right "is, or at least grows out of, a constitutional right." Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291, 294. See Sections 1 to 4, inclusive, Art. I, Constitution of Missouri, 1945, V.A.M.S. The constitution, however, does not guarantee the secrecy of judgments in criminal cases. On the contrary, such records are required to be made available to the public. The instant statute provides that proof of a prior conviction shall affect the punishment a defendant will receive in the event of conviction for the offense of which he is on trial. The enforcement of criminal laws and the proper punishment of persons convicted of the violation thereof are matters of great public interest and concern. It is apparent that the right of privacy must give way to the public interest in matters of that nature. "The relation to the public of one who has been convicted of crime is such as to forfeit whatever right of privacy he may be said to have ever possessed, * * * at least to the extent that the protection of society requires such forfeiture." 77 C.J.S. Right of Privacy § 3, p. 403. It is also said, "The rule has been laid down that a communication of even a private matter does not violate the right of privacy, when the publication would be a privileged communication under the principles governing libel and slander." 41 Am.Jur., Privacy, Section 20, page 940. It is elementary that a judicial disclosure that a person has been convicted of a crime is so privileged. We rule this assignment against defendant and reaffirm our former rulings to the effect that Section 556.280 is constitutional.

▮ We will next consider assignment 10 which reads as follows: "That the court erred and influenced the thinking of the jury by stating defendant was charged with having been previously convicted of murder when the allegation was that he was previously convicted of manslaughter." That contention refers to an incident which occurred during the voir dire examination of the panel when a prospective juror made inquiry about the prior conviction of the defendant, as disclosed by the following: "Mr. Sercombe: I want a clarification of the previous conviction and how it relates to this killing. Mr. Spottsville: The Court will answer that. The Court: I think it is proper for the Court to say that the State proposes to prove that the defendant was convicted of murder some years ago" etc. Later, the court made the following

statement to the jury: "The Court: Before we begin the trial of this case, members of the jury, the Court wants to correct an error that was made yesterday as the Court was explaining, at the request of one of the prospective jurors, a member of the panel, what was meant by the Habitual Criminal Act, and in explaining that the Court indicated that the State was charging that this defendant had been, on the thirteenth day of September 1933, found guilty by a jury of murder and sentenced to five years in the Intermediate Reformatory. The error that was made by the Court was in referring to the charge as murder. He was not convicted of murder, but of manslaughter. * * * so I want the jury to understand that this defendant is being charged by the State as having been convicted previously of manslaughter and not of murder, and you will disregard any reference the Court made as to the word 'murder.' The Court meant to say 'manslaughter' and not 'murder.' "

The transcript does not disclose that any objection was interposed to the erroneous statement of the court. However, we think that the defendant was not prejudiced by the statement. The trial court thereafter made an unequivocal statement to the jury pointing out the error and giving the jury the correct facts. Moreover, the evidence thereafter introduced clearly disclosed that the prior conviction was for manslaughter. Certainly, under the circumstances disclosed, the incident in question would not constitute reversible error.

The next assignment complains of the error of the court "in ruling that Helen Nolan was not the wife of defendant." While that assignment is rather incomplete, it evidently refers to the fact that Helen Nolan was permitted to testify on behalf of the State over the objection of defendant that she was his wife and hence could not testify without his consent. See Section 546.260. When Helen was offered as a witness and defendant made the objection indicated, the court heard evidence (outside of the hearing of the jury) to determine the fact issue as to whether or not she was the wife of the defendant. Helen testified that she was not the wife of defendant. She stated, however, that during all of the time she had lived with him she had thought she was defendant's wife. This for the reason that in September 1943, she and defendant had gone to Omaha, Nebraska, for the purpose of getting married. Upon arriving there at 9 p. m., defendant took her to the home of one purporting to be a minister who performed a marriage ceremony and gave them some sort of certificate of marriage. They returned to Kansas City later that night and began living together as husband and wife. She stated, however, that they did not obtain any marriage license.

In the statement given by defendant to the police, the following appeared: "Question: Are you married? Answer: Not legally—Helen Nolan has been living with me for about eleven years." Helen testified that when she learned of what defendant had said about the validity of their marriage she caused a search to be made of the records of Douglas County, Nebraska (in which Omaha is located), and was advised that there was no record of any license having been issued authorizing the marriage of the witness and defendant. That testimony was supported by an affidavit to that effect made by the clerk of the county court of Douglas County, which was admitted without objection. Defendant did not testify upon that issue.

Section 546.260 provides, in part, "that no person on trial or examination, nor wife or husband of such person, shall be required to testify * * *." For the purposes of this case, we will assume (but do not decide) that Helen should not have been permitted to testify over the objection of the defendant in the event she was his wife. It was the function of the trial court to determine that fact issue. And, in any event, the statute would have no application unless Helen was found to be the *lawful* wife of defendant. State v.

Shreve, 137 Mo. 1, 38 S.W. 548. We conclude from our review of the evidence on the issue under consideration that there was ample evidence to justify a finding that the witness was not the lawful wife of the defendant. We note that Section 104, Chapter 42, RRS Nebr.1943, which was in effect at the time of the alleged marriage, provides as follows: "Previous to the solemnization of any marriage in this state, a license for that purpose must be obtained from the county judge of the county wherein the marriage is to take place, and no marriage hereafter contracted shall be recognized as valid unless such license has been previously obtained * * *." The evidence indicates that no such license was obtained and hence, under the express provision of that statute, the alleged marriage *would not have been valid.* It is undisputed that these persons lived together in Missouri as husband and wife for about twelve years, but that fact would not create a valid marriage relationship as common law marriage was abolished in Missouri in 1921. See Laws of Mo.1921, p. 468, and present Section 451.040. In addition to the foregoing, as heretofore set out, defendant stated in his confession that he was not legally married to Helen Nolan. At no time did he see fit to deny that statement or to offer other evidence which would tend to establish the validity of his purported marriage to Helen. We hold that the trial court did not err in ruling that Helen Nolan was a competent witness in this cause.

■ Finally, defendant complains of the following statement of the assistant prosecuting attorney in his closing argument to the jury. "After he had hit her with a baseball bat and she had been knocked to the floor, he got the gun and stepped back and *cooly* poured two bullets into this already helpless woman." It is said that the argument was beyond the scope of the evidence and "was intended to sway the jury to the prejudice of the defendant." In examining the transcript we find that defendant did not make any objection to that statement and, in fact, made no objection at any time during either the opening or closing argument of counsel for the State. In that situation the present contention is not before us for review. State v. Quilling, 363 Mo. 1016, 256 S.W.2d 751.

We have examined the record in regard to matters not required to be preserved in the motion for new trial and find no error. The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.